RONALD H. TONKIN, Attorney General of the
Virgin Islands, Plaintiff

v.

HONORABLE CYRIL MICHAEL, Presiding Judge of the
Municipal Court of the Virgin Islands, Nominal Defendant

Civil No. 364-72

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

HENRY MARTIN, JR., Defendant

Civil No. 367-72

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

LOUIS HENLEY, Defendant

Civil No. 368-72

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

PATROLMAN AL MITCHUM, Defendant

Civil No. 369-72

District Court of the Virgin Islands
Div. of St. Thomas and St. John

October 5, 1972

RONALD H. TONKIN, Attorney General, St. Thomas, V.I., *for the plaintiffs and for the defendants* in Civil Nos. 367, 368 and 369-72.

HENRY L. FEUERZEIG, Esquire, Assistant Attorney General of the V.I., *appeared for the plaintiffs and defendants at the hearing.*

HENRY L. FEUERZEIG, Esquire, Assistant Attorney General of the V.I., *appeared for Ronald H. Tonkin, Attorney General of the V.I. and for Cyril Michael, Presiding Judge of the Municipal Court, in Civil No. 364-1972.*

YOUNG, *Judge*

## MEMORANDUM OPINION

Petitioner, the Attorney General of the Virgin Islands, seeks to challenge, by writ of mandamus or prohibition, or in the alternative, by writ of review, the propriety of the action of a Municipal Court judge[1] in appointing private prosecutors to prosecute three separate complaints against three police officers. The complaints encompass three separate incidents involving the officers' behavior toward the complainants while said complainants were being arrested.[2] After reviewing the facts of each incident, the Attorney General filed complaints against the citizens who had been arrested, but refused to file cross-complaints against the police officers as requested. Upon being notified

---

[1] The judge is deemed to be a nominal defendant here since the petition seeks a "review of the intrinsic merits of a judicial act." Rapp v. Van Dusen, 350 F.2d 806, 812 (3rd Cir. 1965).

[2] The circumstances surrounding the arrests are briefly as follows. The first incident arose when a police car driven by Officer Henley allegedly collided with an automobile driven by a citizen named Bradstrom. In the post-accident melee, Bradstrom was arrested and charged with aggravated assault. In turn, Bradstrom filed a complaint against Henley charging oppression and assault and battery. The second arrest took place at the airport in St. Thomas. While Patrolman Martin was citing a woman for illegal parking, she attempted to drive away. Whereupon charges were filed against the woman, and she countercharged oppression. The third situation involved the arrest by Officer Mitchum of a citizen named McLean for disturbing the peace, and when he allegedly resisted that arrest, he was also arrested for resisting arrest and carrying a dangerous weapon. McLean, in turn, charged Officer Mitchum with oppression and aggravated assault.

175

of those refusals, the individuals appeared before the Clerk of the Municipal Court and swore out complaints. Some time afterward, their private counsel sought leave of Court to appear as private prosecutors on behalf of the Government in each of the cases. Acting under the apparent authority of Rule 132,[3] the trial court granted leave to appear in that capacity. Thereafter, the Attorney General made special appearances in each of the cases pending against the policemen and proposed that the trial court dismiss the complaints on the basis that it lacked both jurisdiction and authority to hear them. The trial court issued its opinion and order of July 19, 1972, denying the motion.

Petitioner contends that the denial of his motion is an unauthorized usurpation of an executive function inasmuch as the authority to prosecute violations of the laws of the Virgin Islands is vested exclusively in the Attorney General by virtue of Section 114(a)(2) of Title 3 of the Virgin Islands Code.[4] This being so, the petitioner argues that the action of the trial court is violative of the constitutional doctrine of the separation of powers. The thrust of petitioner's argument has merit.

---

[3] "The United States Attorney, by himself or the Assistant United States Attorney, or in his absence the Attorney General of the Virgin Islands, by himself or an Assistant Attorney General, shall conduct all criminal proceedings on behalf of the Government of the Virgin Islands in the Municipal Court. If the United States Attorney or the Assistant United States Attorney or the Attorney General or an Assistant Attorney General does not appear, any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the Government of the Virgin Islands in cases of disorderly conduct, in cases involving motor vehicle violations or traffic violations and, with leave of court in other cases." 5 V.I.C. App. IV, Rule 132. This rule was initially established by order of the District Court on December 18, 1956.

[4] The Attorney General shall have the following powers and duties: . . . (2) to prosecute in the inferior courts all offenses against the laws of the Virgin Islands.

I

Before reviewing the significance of the trial court's action below, it would be appropriate to trace the history of the rule in question and the evolution of the misdemeanor prosecutorial powers given to the Attorney General of the Virgin Islands. Prior to the transfer in 1962[5] of misdemeanor prosecutorial powers to the Attorney General, misdemeanors were within the jurisdiction of the United States Attorney to prosecute in the Municipal Courts of the Virgin Islands (which were, at that time, called "Police Courts"). Due to the inadequate staffing of the United States Attorney's office and his preoccupation with the prosecution of felonies in both divisions of the District Court, misdemeanors were more often than not tried in the Municipal Courts without a prosecutor, or, unhappily with the judge assuming the dual role of prosecutor and judge. It was not surprising then that the court would frequently appoint a private attorney as a prosecutor or would accept the offer of a private attorney to prosecute a misdemeanor in which the attorney represented the complaining witness.

The practice thus came about, not because the U.S. Attorney refused to prosecute misdemeanors, but rather because of his inability to prosecute both misdemeanors and felonies. The basis for the practice was acquiescence rather than a refusal to prosecute. To a lesser extent a similar practice developed in the St. Croix Division of the District Court with regard to certain kinds of prosecutions when the United States Attorney found it difficult to handle felony prosecutions in St. Croix in addition to his work load in the St. Thomas Division. Those private prosecutors appeared only after having been granted permission to do so by the U.S. Attorney.

---

[5] Act of March 29, 1962, No. 855 § 2 (1962) Sess. L. 99.

Paralleling the development of the local private prosecutor practice is the evolution of the role of the Attorney General in relation to the prosecutorial function. Under the 1959 amendment to the Revised Organic Act, the Department of Law was first created[6] as an agency of the Office of the Governor vested with primary, though limited, authority for litigating civil matters into which the Government was drawn. Yet, the responsibility for the conduct of all criminal matters, felonies and misdemeanors, in the District and inferior courts, remained within the bailiwick of the United States Attorney as established in the Revised Organic Act of 1954. Shortly thereafter, by an act of the Legislature in 1962,[7] the Department of Law was established as a separate executive department and the Attorney General was given the power and duty to prosecute in the inferior courts all offenses against the laws of the Virgin Islands and, in addition, all duties and functions with respect to the Virgin Islands government previously assigned to the United States Attorney solely by virtue of the laws of the Virgin Islands were also transferred to the Attorney General. From this there evolved a dichotomy in the misdemeanor-felony prosecutorial function in the Virgin Islands fashioned by the evolution of the form and growth of the territorial government.

Basically, it reflects the gradual move toward a higher degree of territorial autonomy. Cast in this light, I believe that the history just reviewed is most pertinent to the issue at hand, namely, whether the Attorney General has been empowered with primary and exclusive authority for the misdemeanor prosecutorial function.

---

[6] Pub. L. 86–289, § 4, 73 Stat. 569 (Sept. 16, 1959).
[7] Act No. 855 § 2, Sess. L. 1962, p. 99 (March 29, 1962).

## II

■ The Legislature in Title 3, section 114 has indicated that the Attorney General has the power and duty "to prosecute in the inferior courts all offenses against the laws of the Virgin Islands." Through this statute, the Attorney General has been given the mantle of broad discretion and exclusive control over the misdemeanor prosecutorial function.

The Department of law is part of the Executive, and not the Judicial Branch of the government. It is the Attorney General who must determine whether, where and how to prosecute. For good or for ill, certain wide areas of our criminal justice system must be committed to the discretion of public officials. That public prosecutors do exercise enormous discretionary authority is widely recognized. Kaplan, The Prosecutorial Discretion—A Comment, 60 N.W. 4 L. Rev. 174 (1965–66); Comment, The Right to Non-discriminatory Enforcement of State Penal Laws, 61 Colum. L. Rev. 1103 (1961); Note, Prosecutor's Discretion, Pa. L. Rev. 1057 (1955).

## III

■ Having held that the Attorney General is the prosecuting authority for misdemeanors in this Territory, I turn now to the second contention made by the petitioner that he and certain designated members of his staff have the sole right to sign and file complaints. The prosecution of misdemeanors are instituted on the basis of a complaint, a written statement of the essential facts constituting the offense. Petitioner's contention is based principally on the strength of a strained analogy between the Federal Rules of Criminal Procedure and those of the Municipal Court. While Rule 7 of the Federal Rules of Criminal Procedure requires the signature of the United States Attorney on the information in a felony case, this

is no valid reason to apply that same requirement to the Municipal Court Rules by implication or otherwise. Rivera v. Government, 6 V.I. 155, 375 F.2d 988 (3rd Cir. 1967) (rules of Municipal Court are self-contained).

 Petitioner refers to and relies, in part upon section 114(c) of Title 3 of the Virgin Islands Code[8] as conferring upon him the exclusive right to sign and file complaints. I disagree. That section of the Code merely provides that the Attorney General, his designated assistants and his complaint clerk are empowered to administer oaths in connection with the preparation and filing of complaints. It does not give such personnel the exclusive authority to sign or file complaints. A private citizen, in my opinion, is still authorized to file a complaint if the prosecutor refuses or neglects to do so. However, as stated above, and for policy reasons, I believe that the public prosecutor must supervise the actual conduct of the case. First, in the interests of just, orderly and efficient administration of law, a public officer should be vested with control over the actual prosecution of the case. Second, in the context of law enforcement, it is desirable to seek uniformity of prosecutorial policy. Our statutes bestow this function upon the Attorney General. Therefore, once the complaint is filed, our system vests in the Attorney General the authority to manage its disposition. The determination of whether and when to prosecute "is a matter of policy for the prosecuting officer and not for the determination of the courts." District of Columbia v. Buckley, 128 F.2d 17 (1942) and United States v. Woody, 2 F.2d 262 (D.Mont. 1924).

---

[8] As amended July 19, 1968, No. 2318, § 1, (1968) Sess. L., pt. II, at 298; Sept. 29, 1970, No. 2820, § 4, (1970) Sess. L. 315.

■ Among the powers held by the Attorney General is the common law power to invoke nolle prosequi.[9] That power is centuries old and, in the absence of statutory rule to the contrary, has been recognized to be in existence in many jurisdictions, including the Virgin Islands. In United States v. Brokaw, 60 F. Supp. 100 (1945), the court refused to grant a petition to show cause why an order of nolle prosequi[10] should not be vacated. The Court commented that the prosecutor is the representative of the public in whom is lodged discretion not to be controlled by the courts. Nor should that discretion be controlled by any interested individual or individuals seeking redress by the use of criminal process for alleged wrongs committed against them.

Of the prosecutor's discretion, another court has stated:

"The Court cannot compel him to prosecute a complaint, or even an indictment, whatever his reasons for not acting. The remedy for any dereliction of his duty lies not with the courts, but with the executive branch of our government and ultimately with the people." Pugach v. Klein, 193 F.Supp. 630, 635 (1961).

## IV

■ I now turn to the questions raised regarding the scope of Rule 132 of the Municipal Court. In section 23 of

---

[9] To re-emphasize the point that courts do not have powers usually vested in the public prosecutor, history records the following:

An incident related in 2 Campbell's Lives of the Chancellors 173 is of interest in this connection. After he had ordered the imprisonment of a group of fanatics called "Prophets" for seditious language, Lord Holt was visited by Lacy, one of their friends, who informed a servant that he carried a message "from the Lord God." Lacy was admitted and told Lord Holt: "I come to you a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for John Akins, his servant, whom thou has cast into prison." Lord Holt replied: "Thou are a false prophet and a knave. If the Lord God had sent thee it would have been to the Attorney General, *for He knows* that it belongeth not to the Chief Justice to grant nolle prosequi; but I, as Chief Justice, can grant a warrant to commit thee to bear him company." Cited by Justice Traynor in People v. Sidener, 25 Cal. Rptr. 697, 375 P.2d 641, 642, n. 4 (1962).

[10] On the federal level, rule 48(a) of the Criminal Rules is a restatement of the common law procedure of filing a nolle prosequi. However, the limitation that it be done by leave of court is new. Wright, Federal Practice and Procedure §§ 811, 812 (1969).

the Revised Organic Act of 1954, the Congress of the United States granted to the District Court of the Virgin Islands authority to formulate the rules of procedure which would govern the activities of the inferior courts in the jurisdiction.[11] That specific grant of authority is not unlike that under which the Federal Rules of Criminal Procedure have been promulgated by the Supreme Court.[12] Hence, Rule 132 of the Municipal Court Rules is the product of that statutory grant of authority and has been established by this Court in the exercise of its supervisory powers over the inferior courts of this jurisdiction. Under the Congressional Act authorizing this Court to draft the Municipal Court Rules, those rules must be taken to have the force of law. District of Columbia v. Hunt, 163 F.2d 833 (D.C. Cir. 1947); Rosenfield v. Kay Jewelry Stores, Inc., 400 F.2d 89 (10th Cir. 1968). See Government of the Virgin Islands v. Rosas, decided April 18, 1972.

██ In order to bring Rule 132 into harmony with the statute which, in my opinion, vests the misdemeanor prosecutorial power exclusively in the Attorney General, the rule must be narrowly interpreted as follows: First, in cases other than those specifically provided for in the rule as to disturbing the peace, traffic and motor vehicle violations, where the Attorney General fails to appear to prosecute a complaint (but does not refuse to prosecute), the Court may, pursuant to Rule 132, appoint private prosecutors. It would be advisable, for the purposes of the rule, that the prospective private prosecutor seek the permission of the Attorney General to prosecute before attempting to obtain leave of Court. Second, where the Attorney General exercises his discretion not to have the cause prosecuted by his office or by anyone else, then the Court should not appoint or accept any proffered private prose-

---

[11] July 22, 1954, ch. 558, § 23, 68 Stat. 506.

[12] 18 U.S.C. § 3771.

cution. This practice would be consonant with the recommendations set forth in the study made by the American Bar Association. See, Standards Relating to the Prosecutorial Functions and the Defense Function, American Bar Association, (1971). For procedures in other jurisdictions involving the appointment of private or special prosecutors, see: Commonwealth v. Carpenter, 172 Pa.Super. 271, 94 A.2d 74 (1953) (over defendant's objection private prosecutor given leave to assist); Lopez v. State, 437 S.W.2d 268 (Tex.Ct.Crim.App. 1968) (court has discretion in allowing special prosecutor to assist); Bingham v. State, 290 S.W.2d 915 (Tex.Ct.Crim.App. 1956) (rule permitting other attorneys to appear and prosecute); People v. Calkins, 8 Cal. App.2d 251, 47 P.2d 544 (1935) (member of bar permitted to associate with prosecution); People v. Miller, 13 Ill.2d 84, 148 N.E.2d 455 (1958) (private counsel allowed to assist prosecutor).

I am aware that the complaints in this appeal for which the Municipal Court appointed private prosecutors are founded upon charges against police officers. Unfortunately, incidents involving "overly zealous" police officers are not without number in our jurisdiction. See, e.g., Government v. Lenhardt, 7 V.I. 406 (Mun.Ct. 1969). I do feel strongly that the proper exercise of the police functions is so fundamental to the existence of our system of government that the judiciary can ill afford to stand idly by in cases where such abuses may exist. However, I must take judicial notice of a practice which has existed in the Virgin Islands for many years and which apparently still exists today. I refer to the practice based upon the old army doctrine that a "good defense is a good offense", but which many lawyers apply, in filing cross-complaints, whether the offense is "good or bad". I wish to make no inference as to the bona fides of the cross-complaints in these cases, but generally speaking, if there is a good cross-complaint,

there should be other areas in which they may be heard and for which there will be a remedy. Dixon v. District of Columbia, 394 F.2d 966 (D.C. Cir. 1968). To a certain extent, the Civil Rights Act, provides an alternative opportunity for wronged or injured complainants to bring to light the propriety of the police action taken against them. 42 U.S.C. §§ 1983, 1985. Whatever the remedy, it may well or perhaps better be pursued outside of the context of the criminal system. See, Nugent v. Shepphard, 318 F.Supp. 314 (N.D.Ind. 1970).

 The three cases reviewed will be remanded to the trial court with instructions to grant petitioner's motion to dismiss or to permit the petitioner to proceed, within the realm of his authority, to plead nolle prosequi (as, perhaps, Lord Holt would hath it).