**IN RE LEROY RICHARDS, Petitioner.**

Civ. No. 97-123

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 19, 1999

A.J. Weiss & Associates, St. Thomas, VI, *for Petitioner*

Maureen Phelan-Cormier, Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, VI, *for Respondent*

161

Leon Kendall, Esq., General Legal Counsel, Territorial Court of the Virgin Islands, St. Thomas, VI, *for Nominal Respondent*

MOORE, *Chief Judge*

## OPINION: MEMORANDUM OPINION

## PER CURIAM

## I. INTRODUCTION

This matter is before the Court on petition by Leroy Richards for a writ of mandamus on the ground that Territorial Court Judge Ive A. Swan ["nominal respondent" or "Judge Swan"] erroneously refused to grant the motion of the respondent, the Government of the Virgin Islands ["government"], to dismiss criminal charges filed against him. For the reasons set forth below, the Court, having given all parties the opportunity to present argument to the Court and having reviewed the record, will issue the writ.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a criminal proceeding in Territorial Court. On October 19, 1995, Leroy Richards ["petitioner" or "Richards"] was arraigned on a charge of second-degree rape in violation of V.I. Code Ann. tit. 14, § 1702,[1] and the matter was assigned to Judge Swan. Petitioner was released on bail following arraignment. Status hearings were conducted on March 11 and 13, 1997.

---

[1] To the extent they provide background for understanding the issues presented by this petition, we have accepted the following as the facts underlying the charges brought against petitioner. Richards stayed with a friend's girlfriend and her family after Hurricane Marilyn destroyed his house in September of 1995. Early in October 1995, the girlfriend's 15 year-old daughter told her mother that Richards had raped her several days earlier. The daughter was taken to the emergency room and the police notified per hospital procedure. Richards, learning the police were looking for him, surrendered and was arrested. These facts were gleaned from the limited portions of the trial court record filed in this Court, as well as the papers filed on behalf of the parties. The Appellate Division has accepted these pleadings for what they are worth and is capable of distinguishing and disregarding any inadmissible evidence that may be contained therein. We note and reject the assertions of the nominal respondent that the motions of petitioner and government contain 'inadmissible hearsay' which should be ignored. (*See, e.g.,* Nominal Resp't's Reply to Pet'r's Resp. to Mot. to Dismiss ["Nominal Resp't's Reply to Pet'r"] at 1-8.)

Following discussions between counsel for petitioner and the government and based on information obtained through counsels' interviews with the 15-year old complainant, as well as neighbors, several members of complainant's family, family friends, and the petitioner, the parties entered into a plea agreement by which Richards would plead guilty to a misdemeanor count of unlawful sexual contact in violation of 14 V.I.C. § 1709. (Petitioner's Resp. to Mot. to Dismiss ["Petitioner's Resp."] at 7). On April 9, 1997, the government filed a motion to amend the information to add the misdemeanor of unlawful sexual contact in violation of 14 V.I.C. § 1709 to the original charge of second-degree rape. (Government's Reply to Mot. to Dismiss ["Government's Reply"] at 1; Petitioner's Resp. at 7 & Ex. H.) At a pretrial conference on April 29, 1997, Judge Swan rejected the plea agreement and scheduled the case for jury selection on June 2, 1997. (Government's Reply at 2.)

The government filed a new information on May 21, 1997, charging Richards with one count of unlawful sexual contact (14 V.I.C. § 1709), which was captioned as *Government of the Virgin Islands v. Richards*, Terr. Court Crim. No. 195/1997, and assigned to another judge of the Territorial Court, the Honorable Brenda Hollar. On May 29, 1997, petitioner appeared before Judge Hollar on the new information and the parties informed the court that Richards wished to enter a plea of guilty. The government also alerted Judge Hollar about the proceedings before Judge Swan on the original information. (Transcript of May 29, 1997 Hearing, Terr. Ct. Crim. No. 195/1997 ["Transcript of Judge Hollar Hearing"] at 6.) Since the new information and the plea agreement arose out of the same incident with the same victim already pending before the nominal respondent, Judge Hollar refused to proceed any further and transferred the matter to Judge Swan. (*Id.* at 19-20.)

Also on May 29, 1997, the government filed a motion to dismiss without prejudice the original information in Terr. Ct. Crim. No. F402/1995 still pending before Judge Swan. In support of its motion, the prosecution stated that the government would "not be able to prove beyond a reasonable doubt all the elements charged." (Petitioner's Resp. at Ex I.) Then on June 11, 1997, the government moved to dismiss without prejudice the second information charg-

ing only the misdemeanor of unlawful sexual contact (Terr. Ct. Crim. No. 195/1997) on the same ground, namely, that the "Government's case lacks prosecutive merit." (*Id.* at Ex. J.) Rather than rule on these motions, Judge Swan scheduled both matters for a hearing on July 17, 1997, and directed the government to have the complainant, her mother, the Assistant Attorney General handling the case, and certain supervisors in the Attorney General's Office present so he could obtain the facts and examine the government's motivation at the July 17th hearing. (Government's Resp. at A-4; *see also* Transcript of June 12, 1997 Hearing Before Judge Swan (Terr. Ct. Crim. No. 195/1997) at 4-11.)[2]

On June 18, 1997, the parties filed a Supplemental and Joint Motion to Dismiss the felony charge, *Government of the Virgin Islands v. Richards*, Terr. Ct. Crim. No. F402/1995. Reiterating that the case lacked prosecutive merit and could not be proved beyond a reasonable doubt, and stating that it should be dismissed in the

---

[2] At the June 12, 1997 hearing in Crim. No. 195/1997, Judge Swan refused to dismiss the case and instead arraigned petitioner on the misdemeanor, to which Richards plead not guilty. Judge Swan notified the parties that he would be scheduling a hearing on the matter at which he would examine the complainant and her mother and question the government attorneys:

I am not going to sign any motion to dismiss until I have had an opportunity to talk to the victim . . . .

. . .

... [Assistant] Attorney [General] Robinson, file the address of the victim and her mother, you see, with this Court and I am going to put it on for a hearing and I am going to find out from the mother and the victim whether or not they are in — that they want to dismiss this case, because the circumstances, as I recall, is [sic] that after Hurricane Marilyn he didn't have anyplace to stay, and this lady, out of the good graces of her heart ... allowed him to stay in her house out of the elements because he didn't have anyplace to stay after the hurricane, ... and then if he is going to do that to her daughter, then there is going to be some sort of justice somewhere if what is related in my file is absolutely true. Either it's true or not true.... If it didn't have the "goods", it shouldn't have been filed, then it adversely affects his character forever and forever, amen. If you have the "goods," under the circumstances which was [sic] related to me in the file that this matter happened, then this matter should not be dismissed at all. Then there is no justice.

Either way, I am going to look into it, you see. I know that's going to create — I know all about the decisions of Judges not going along with a dismissal, a prosecutorial discretion and so forth, but we have a higher conscious [sic] here . . . . I am going to find out if this lady and her daughter knows [sic] what's happening and what the Government is going to do, and if they walk in here and say, Judge, drop it, get rid of it, I will drop it like a hot potato. . . .

(Transcript of June 12, 1997 Hearing at 4-11.)

164

interests of justice, the government, joined by petitioner, also included the sworn affidavits of the complainant and her mother. (*Id.* at A-3.) In these affidavits, both the complainant and her mother stated that they did not wish these charges to be brought and, more importantly, would no longer testify against petitioner. (*Id.* at A-8 to A-10.) Both also stated that no one had forced or coerced them into signing the affidavits. (*Id.*)

On July 2, 1997, petitioner filed a renewed motion to dismiss and to stay the July 17th hearing on F402/1995. (*Id.* at A-11.) The government concurred with the petitioner's motion in its response filed July 15, 1997. (*Id.* at A-15.) Judge Swan has refused to grant any of the motions to dismiss, nor did he rule on the motion to stay the July 17th hearing.

On July 15, 1997, Richards filed this petition for writ of mandamus and a motion that the Appellate Division stay the July 17th hearing. Petitioner requested that this Court direct Judge Swan to grant both the government and the petitioner's motions to dismiss the original felony information (Terr. Court Crim. No. F402/1995).[3] Also on July 15th and of significance to this appeal, the Territorial Court amended Territorial Court Rule 128. *See* Order, Terr. Ct. Misc. No. 75/1997 (July 15, 1997). We granted petitioner's motion for a stay of the July 17th hearing on July 16, 1997, pending review of the petition for writ of mandamus. *See* Order, D.C. Civ. App. No. 1997-123 (July 16, 1997).

## III. DISCUSSION

### A. The Mandamus Jurisdiction of the Appellate Division of the District Court

■ Regarding the assertion of the nominal respondent that the Appellate Division lacks mandamus jurisdiction over the judges of the Territorial Court, we again articulate the authority for our holding that "[t]here absolutely can be no doubt that the Appellate Division has the power and jurisdiction to hear and determine petitions for writs of mandamus to the judges of the Territorial Court." *Dawsey v. Government of the Virgin Islands*, 33 V.I. 110, 903 F.

---

[3]The petitioner has not asked this Court to order dismissal of the second information charging the misdemeanor of unlawful sexual conduct (Terr. Ct. Crim. No. 195/1997).

Supp. 878, 880 (D.V.I. App. Div. 1996); *see also Dawsey v. Government of the Virgin Islands*, 34 V.I. 174, 931 F. Supp. 397, 400-01 (D.V.I. App. Div.), *aff'd*, 106 F.3d 384 (3d Cir. 1996), *cert. denied sub nom. Hollar v. Government of the Virgin Islands*, 520 U.S. 1277, 117 S. Ct. 2459, 138 L. Ed. 2d 216 (1997).

The nominal respondent seeks to base the contention that this Court lacks mandamus jurisdiction on the proposition that "'only Congress has the power to determine the jurisdiction of the District Court of the Virgin Islands under Article IV of the United States Constitution.'" (Nominal Resp't's Mot. to Dismiss Pet. at 7 (quoting *Estate Thomas Mall Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258, 261 (3d Cir. 1991), *cert. denied*, 502 U.S. 808, 116 L. Ed. 2d 28, 112 S. Ct. 50 (1991)).) We agree with the nominal respondent that "it is clear that only where Congress authorizes the V.I. Legislature to vest certain jurisdiction in the District Court, can the V.I. Legislature act to vest such jurisdiction." (*Id.*) We differ with the suggestion that Congress and the Legislature have not done so.

The simple, obvious, and undeniable fact is that Congress provided just such authorization to the local legislature and the Legislature has exercised that authority. Section 23A(a) of the Revised Organic Act states that "the District Court of the Virgin Islands shall have such appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law." 48 U.S.C. § 1613a, reprinted in V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 1998) (preceding V.I. Code Ann. tit. 1) ["Revised Organic Act"].[4] Pursuant to this congressional authority, the Virgin Islands Legislature enacted both 4 V.I.C. § 33, granting the District Court general appellate jurisdiction over the Territorial Court, and 4 V.I.C. § 34, granting to the District Court, including its Appellate Division, the power to issue "writs of habeas corpus, review and prohibition and *all other writs* and *make mandatory orders* and all other orders *necessary or appropriate in*

---

[4]The same amendments to the Revised Organic Act which created the Appellate Division also gave the local legislature the authority to divest this Court of its appellate and mandamus jurisdiction over the Territorial Court by establishing an appellate court for the Virgin Islands under local law. *See* Revised Organic Act §§ 21(a) & 23A(a), 48 U.S.C. §§ 1611(a) & 1613a(a).

*aid of its original* or *appellate jurisdiction* and agreeable to the usages and principles of law." (Emphasis added.)[5] Section 34's power to issue writs and mandatory orders in aid of the Appellate Division's appellate jurisdiction over the decisions of the judges of the Territorial Court has never been revoked, nor is there any basis to suggest that it has been repealed by implication.

Even without section 34, the local legislature has exercised its congressional authority by enacting 4 V.I.C. § 324, which gives the Appellate Division all the means necessary in the exercise of its appellate jurisdiction to correct abuses of discretion committed by a judge of the Territorial Court and to mandate that the erring judge comply with the dictates of the law. Section 324 reads as follows:

> When jurisdiction is by law conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of the proceedings is not specially pointed out by law or by rules of procedure adopted pursuant to law, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the law.

Writs of mandamus and mandatory orders are clearly within "all the means necessary to carry [this Court's appellate jurisdiction] into effect" and are surely a "suitable process or mode of proceeding ... conformable to the spirit of the law."

Before reaching the merits of Richardson's petition, we dispose of the nominal respondent's claim that his refusal to grant the prosecution's motion to dismiss was authorized by a newly promulgated rule of the Territorial Court. We also determine the substantive law which governs the government's right to dismiss criminal prosecutions.

---

[5] Nominal respondent asserts that appellate jurisdiction is "contained in 4 V.I.C. § 33 and nowhere else," ignoring the clear grant of authority in 4 V.I.C. § 34 to issue all writs and orders necessary to exercise that appellate jurisdiction. (*See* Nominal Resp't's Mot. to Dismiss Pet. at 7.) Without suggesting any statutory or decisional support, nominal respondent instead raises the same argument put forth in *Dawsey* that section 34 is "archaic and obsolete," the summary rejection of which by this Court was affirmed by the Court of Appeals for the Third Circuit without the necessity of a written opinion.

## B. In Amending Territorial Court Rule 128, the Territorial Court Exceeded Its Rule-Making Authority

On the same day petitioner filed for mandamus in this Court, July 15, 1997, the Territorial Court amended Rule 128 of the Territorial Court by adding subsections (b) and (c). See Order, Terr. Ct. Misc. No. 75/1997 (July 15, 1997). As thus amended, Rule 128 reads:

> (a) All pre-trial motions shall be made prior to the motion deadline established by the court, unless otherwise extended by the court for good cause shown. The court shall rule on all motions prior to judgment.

> (b) No criminal case filed in the court, including traffic citations, shall be dismissed upon motion by any party except upon a determination by the Court that the dismissal is in good faith, in the public interest, and in the interest of justice.

> (c) Nothing in this rule shall be construed to limit the right of a prosecutor to "nolle pros" criminal matter prior to the filing of a criminal complaint or information.[6]

In his pleadings and argument before this Court, Judge Swan has defended his refusal to grant the government's motion to dismiss the complaint against Richardson on this newly amended Rule 128. (*See* Nominal Resp't's Mot. to Dismiss Pet. at 5-6.) Of course, the nominal respondent could not have relied on the new Rule 128(b) because it was not promulgated until the very day that the petition for mandamus was filed, July 15, 1997, which was after Judge Swan had refused to grant the government's motions to dismiss. We nevertheless determine the validity of the amended rule in the course of deciding the applicable substantive law.

---

[6] "Nolle prosequi," commonly referred to as "nolle pros," means that the prosecutor "will no further prosecute" the case. BLACK'S LAW DICTIONARY 1048 (6th ed. 1990). By definition, a case must have been filed before the prosecutor can "nol pros" it. Other rules of the Territorial Court provide that no case is pending until a complaint or information is filed. *See* TERR. CT. R. 121-31. Therefore, the seeming preservation in amended Rule 128(c) of at least some part of the Executive's power to nolle pros a "case" in fact is meaningless and illusory.

168

The Revised Organic Act gives the Territorial Court the power to promulgate its own rules of "practice and procedure." Revised Organic Act § 21(c), 48 U.S.C. § 1611(c).[7] A rule of "practice and procedure" defines a "particular way of doing something" or a "manner of proceeding." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80, 131 L. Ed. 2d 94, 115 S. Ct. 1223 (1995). As opposed to a substantive rule of law, a procedural rule "regulates ... "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Hanna v. Plumer*, 380 U.S. 460, 464, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 85 L. Ed. 479, 61 S. Ct. 422 (1941)). A substantive rule of law creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law. *Id*. While a procedural rule may affect a substantive right, any such effect must be incidental and may not materially modify a right granted by the substantive rule of law. *Id*.

Rule 128(b) is a substantive rule of law and not a rule of "practice and procedure." Rule 128(b) is an attempt by the judicial branch to create and define the duties, obligations, and rights of the executive branch to prosecute crime and criminals in the Virgin Islands. Under Virgin Islands substantive law, "[i]t is the Attorney General who must determine whether, where and how to prosecute." *Tonkin v. Michael*, 349 F. Supp. 78, 81 (D.V.I. 1972.[8] The executive branch, through the Attorney General and the Virgin Islands

---

[7] Section 21(c) of the Revised Organic provides:

> The rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by local law or the rules promulgated by those courts.

Revised Organic Act § 21(c), 48 U.S.C. § 1611(c).

[8] Ronald Tonkin, Attorney General, sought a writ of mandamus compelling Judge Cyril Michael, the Presiding Judge of the then Municipal Court of the Virgin Islands, predecessor to the Territorial Court, to dismiss three pending criminal complaints. When the Attorney General decided not to prosecute the complaints, the court appointed private attorneys as private prosecutors and proceeded with the complaints. 349 F. Supp. at 79. In granting the Attorney General's petition for writ of mandamus, the District Court held that the trial judge's actions violated the constitutional doctrine of separation of powers as the Judiciary cannot disturb the Executive's decision to nolle prosequi a case. *Id*. at 82.

Department of Justice, has broad discretion and exclusive control over the prosecutorial function. *Id.* As recognized by the Court in *Tonkin v. Michael,* the "determination of whether and when to prosecute 'is a matter of policy for the prosecuting officer and not for the determination of the courts.'"(*Id.* (quoting *District of Columbia v. Buckley,* 75 U.S. App. D.C. 301, 128 F.2d 17 (D.C. Cir. 1942)). Since it a substantive rule and not a procedural rule, Rule 128(b) exceeds the authority of the Territorial Court and is therefore ultra vires and void.

Rule 128(b) must be voided on the additional ground that it imperils the constitutionally mandated separation of powers between two co-equal branches of our local government, the Judiciary and the Executive. *See Smith v. Magras,* 37 V.I. 464, 124 F.3d 457, 465-66 (3d Cir. 1997) ("We hold that the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands."); *Harris v. Boreham,* 233 F.2d 110, 114 (3d Cir. 1956) ("'[T]he purpose of Congress . . . was to follow the plan applied from the beginning to the organized territories by creating a government conforming to the American system with defined and divided powers, — legislative, executive and judicial . . . .'" (citation omitted)); *see also* 3 V.I.C. § 114 (setting forth powers and duties of the Attorney General). Under our tripartite system of government, the Executive and the Judiciary are co-equal branches of government and neither may interfere with the core functions of the other. The judicial branch of the territorial government may not arrogate to itself the right to second-guess the exercise by the executive branch of its discretion to nolle prosequi a criminal case.[9] Subsection (b) of amended Rule 128 would make the Attorney General a functionary of the Territorial Court in the prosecution of criminal cases. Its necessary implication is that a Territorial Court judge could order the Attorney General to put on witnesses and argue a case that the Attorney General has decided should not be prosecuted. Under our system of constitutionally

---

[9] As is amply demonstrated by excerpts of the transcript of the hearing of June 12, 1997, quoted in various footnotes in this opinion, this is precisely what Judge Swan did here. The judge took upon himself the right to second-guess the prosecutor's exercise of her discretion to dismiss this criminal case (felony information F402/1995).

balanced powers, each co-equal branch must respect the integrity of the others.

■ In sum, Rule 128(b) is substantive by nature, exceeds the rule-making powers conferred on the Territorial Court by section 21(c) of the Revised Organic Act, and violates the constitutional doctrine of separation of powers. Accordingly, the Territorial Court's Order of July 15, 1997, amending Rule 128 by adding subsections (b) and (c) must be vacated.[10]

## C. Federal Rule of Criminal Procedure 48(a) Is Inapplicable to the Territorial Court

This affirmation that the substantive law of the Virgin Islands preserves in the executive branch the unfettered discretion to prosecute without interference from the judicial branch was not raised or dealt with in *Dawsey*. The only rule in question there was Rule 48(a) of the Federal Rules of Criminal Procedure, which governs dismissals of cases in federal district court. Rule 48(a) provides that the Attorney General of the United States or the United States Attorney may "by leave of court" file a dismissal of a criminal prosecution in a federal court.[11] Because the government

---

[10] Rule 128(c) is a nullity by definition. *See* note 6, *supra*.

[11] Before Rule 48(a) was jointly promulgated by Congress and the federal Judiciary, the Executive enjoyed the same unfettered power to prosecute or dismiss a criminal case in federal court that the Virgin Islands Attorney General presently retains in Territorial Court. *See* FED. R. CRIM. P. 48 advisory committee's note (citing *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457, 19 L. Ed. 196 (1868)). The impact of Rule 48(a) on the Federal Executive's power to nolle pros a case has been extremely limited, probably out of judicial respect for constitutional separation of powers. Rule 48(a) surely does not substitute a judge's discretion for the prosecutor's judgment and discretion. Rule 48(a) is not a judicial usurpation of the executive's power, which distinguishes it from Territorial Court Rule 128(b). A federal trial court may deny leave of court only if there is clear evidence that the prosecutor is acting outside the public interest in choosing to dismiss a criminal case. *See Rinaldi v. United States*, 434 U.S. 22, 30, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977) (judge may refuse to grant government's motion to dismiss only upon affirmative evidence that the dismissal was clearly motivated by considerations contrary to the public interest.); *United States v. Cowan*, 524 F.2d 504, 511 (5th Cir. 1975) ("The exercise of [the Executive's] discretion with respect to termination of pending prosecutions should not be disturbed unless clearly contrary to manifest public interests."), *cert. denied sub nom. Woodruff v. United States*, 425 U.S. 971, 48 L. Ed. 2d 795, 96 S. Ct. 2168 (1977); *Dawsey*, 931 F. Supp. at 403. Indeed, some courts have found that the rule was intended to protect the defendant from possible prosecutorial harassment. *Rinaldi*, 434 U.S. at 29 n.15. Rule 128(b) would permit the Territorial Court to review every motion for dismissal and second guess the prosecutor without any indication

elected not to file a brief in *Dawsey*, and the briefs and papers of the nominal respondent there did not address the merits of that mandamus petition, the question of the controlling substantive law of the Virgin Islands was not before the *Dawsey* panel.[12]

■ The basis for applying any federal rule to proceedings in the Territorial Court is that court's Rule 7, which allows for the Federal Rules of Criminal Procedure to govern only the *"practice and procedure* in the Territorial Court," and then only where the federal rule is consistent with the substantive and procedural law of the Virgin Islands.[13] Federal Rule of Criminal Procedure 48(a) cannot govern criminal proceedings in the Territorial Court for the same reason Territorial Court Rule 128(b) is void. Its application would diminish the substantive power of the executive branch to prosecute by requiring leave of the Territorial Court. Since Rule 48(a) would materially impair and fetter a right granted by substantive Virgin Islands law, it is not within the "practice and procedure" governed by Rule 7 of the Territorial Court. For the same reasons pointed out in our discussion of Territorial Court Rule 128(b), the application of federal Rule 48(a) would also violate the constitutionally mandated doctrine of separation of powers. This holding that Rule 48(a) of the Federal Rules of Criminal Procedure does not govern the dismissal of a case in Territorial Court has no effect on our earlier decision in *Dawsey*.[14]

## D. The Territorial Court's Refusal to Grant the Government's Motion to Dismiss the Criminal Prosecution Against Peti-

---

whatsoever of an abuse of the public interest. We note that the promulgation of the federal rules is a joint enterprise of the Congress and the Judiciary of the United States. The Judiciary must submit any new rules or proposed changes to Congress for its review and approval. *See* 28 U.S.C. § 2073.

[12] See *Dawsey*, 931 F. Supp. at 397.

[13] The Federal Rules of Criminal Procedure apply to criminal proceedings in the Territorial Court, absent an express rule or provision in the law or the rules to the contrary. "The practice and procedure of the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the . . . Federal Rules of Criminal Procedure.' TERR. CT. R. 7.

[14] Since the conduct in *Dawsey* violated even the limited power Rule 48(a) gives judges over criminal dismissals, it surely would have violated the prosecutor's unfettered authority to nolle prosse a case that we uphold here.

172

## tioner Was a Clear Abuse of Discretion and Usurpation of the Executive's Power to Prosecute Criminal Matters

By any analysis, Judge Swan's refusal to grant the government's motion to dismiss was patent error. Under the common law analysis, the government has unfettered discretion to determine when to prosecute a criminal matter. The court's intrusion into that power was an impermissible usurpation of the executive's authority.

Even under Rule 48(a), which Judge Swan at the time had reason to believe governed his conduct, the nominal respondent was required to grant the government's motion to dismiss. As set forth in this Court's opinion in *Dawsey*, the "by leave of court" language of Rule 48(a) imposes a minimal restriction on the Executive's constitutional power to dismiss a prosecution.[15] This emphatically does not include the right of the court to require the government to explain how it arrived at its decision to prosecute or not to prosecute or to evaluate or approve the prosecutor's determination. Even under Rule 48(a), the nominal respondent was required to grant the government's motion to dismiss unless he had "some affirmative basis to believe that the dismissal was clearly motivated by considerations contrary to the public interest." *Dawsey*, 931 F. Supp. at 403 (citing *Rinaldi v. United States*, 434 U.S. 22, 30, 54 L. Ed. 2d 207, 98 S. Ct. 81 (1977)). From his statements on the record, Judge Swan refused to grant the government's motion because he did not believe the prosecutor's statement that she would not be able to prove the case beyond a reasonable doubt or her representation that the case lacked prosecutive merit.[16] Judge Swan has given absolutely no hint either in the proceedings below or before this Court of any of the kinds of improper prosecutorial

---

[15] See note 11, *supra* (discussing scope of Rule 48(a)).

[16] At the June 12th Hearing, the judge questioned the veracity and integrity of the entire prosecution.

Now, we have a problem, because I am going to send for the young lady and her mother, because if what the police officers are going to say here — you see, they can't do that. They can't go out, investigate, find serious charges against a Defendant, have him post bail, go through all of this and come before me and tell me, Judge, we have good evidence that he — that we can prove the elements of these charges, that's why the case was filed, we find probable cause and everything, and then come before me and they are going to plea or cop a plea.

motives which have been recognized under Rule 48(a) by the federal courts as warranting a refusal to grant the prosecution's motion to dismiss.[17]

■ Under either the substantive law of the Virgin Islands or Rule 48(a), the nominal respondent usurped the power of the Executive by refusing to grant the government's motion to dismiss the criminal prosecution of the petitioner.[18]

## E. A Petition for Writ of Mandamus Is the Appropriate Means of Relief in This Instance

### 1. *Standards for Invoking Writ for Mandamus*

The Appellate Division, in a case all too similar to that presented

---

(Transcript of June 12, 1997 Hearing at 5-6.) The nominal respondent then stated his intention to bring the supervisory prosecutors, Assistant Attorneys General Angela Garner and Henry Thomas, before him to justify their actions.

> So, Attorney Robinson, be so kind as to . . . file with the Court by 5:00 o'clock today the address of the . . . young lady and her mother, and I am going to set it up for a hearing. I will send for Attorney Garner and Attorney Thomas. If Attorney Garner and Attorney Thomas are going to stand in front of me and say, Judge, we have reviewed the case, we have discussed it, totally, absolutely no merit because the lady recanted — the victim recanted, it never happened, it never occurred, then, that's the end of that. But all I have here, what, oh, that the dismissal is because of the interest of justice. Well, the interest of justice could take any form. I don't see the particulars of it. You tell me that she recants, she says it never happened, says that it's all a bunch of lies, I lied to the police and the investigation was bogus, then I would drop it. Other than that, I am going to surge ahead unrelentingly and that's how I am going to handle it.

(*Id.* at 10.) The question might arise whether the judge contemplated calling witnesses himself or ordering Attorney Robinson to prosecute the case on pain of contempt.

[17] Examples of such improper prosecutorial motivations are "(1) receiving a bribe, (2) wanting to attend a social event rather than trial, or (3) personally disliking the victim of the crime." *Dawsey*, 931 F. Supp. at 403.

[18] Although the Territorial Court did not explicitly order the government to produce affidavits attesting to the lack of prosecutorial merit of this matter, the papers filed here by nominal respondent suggest that this was necessary before the court would grant a motion to dismiss. (*See* Nominal Resp't's Mot. to Dismiss Pet. at 4.) Under any scenario, it must be reemphasized that the government is not required to produce such information for the court to grant the government's motion to dismiss. Even under Rule 48(a), the trial court judge must rely on the representations of the government that the case lacks prosecutorial merit unless, as noted in the text and note 16, supra, extremely exceptional circumstances exist. To allow otherwise, would enable the court to impermissibly "substitute its judgment for that of the prosecutor." *Dawsey*, 931 F. Supp. at 404.

by Richards' petition, already has addressed the extraordinary nature of the writ of mandamus as a means of relief.

The remedy of mandamus is a drastic one, to be

> invoked only in extraordinary situations. As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" And, while we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy."

> *Kerr v. United States*, 426 U.S. 394, 402-03, 48 L. Ed. 2d 725, 96 S. Ct. 2119(1976) (citations omitted). While grant of the writ is discretionary, it is called for when the petitioner shows that the lower court committed a "clear abuse of discretion," *Mallard v. United States District Court*, 490 U.S. 296, 309, 104 L. Ed. 2d 318, 109 S. Ct. 1814 (1989), and that the error will cause irreparable injury if it goes uncorrected, *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1190, 131 L. Ed. 2d 133, 115 S. Ct. 1251 (1995).

*Dawsey v. Government of the Virgin Islands*, 34 V.I. 174, 931 F. Supp. 397, 400-01 (D.V.I. App. Div.), *aff'd*, 106 F.3d 384 (3d Cir. 1996), *cert. denied sub nom. Hollar v. Government of the Virgin Islands*, 520 U.S. 1277, 117 S. Ct. 2459, 138 L. Ed. 2d 216 (1997). The factors the Court must consider in determining whether the writ of mandamus should issue against Judge Swan are: (1) a clear abuse of discretion amounting to a usurpation of power; (2) a clear and indisputable right to relief; (3) the absence of any other adequate means to receive that relief; and (4) irreparable injury if the error goes unremedied. *Id*. 931 F. Supp. at 401. Petitioner Richards has

satisfied these requirements and has shown his entitlement to this extraordinary remedy.

2. *The Territorial Court's Refusal to Grant the Government's Motion to Dismiss Is a Clear Abuse of Discretion (Factor 1) and Petitioner Has an Indisputable Right to Relief (Factor 2)*

Under the substantive common law of the Virgin Islands,[19] Judge Swan clearly abused his discretion by scheduling a hearing at which the prosecutor, her supervisors, and the complaining witness and her mother would have to testify before the court would decide whether to dismiss the charges against petitioner. In so doing, Judge Swan usurped the Executive's constitutionally separate power under Virgin Islands law to make the determination whether to prosecute or to dismiss a criminal case. (*See* Part I.B and D, *supra*.) The Executive prosecutes and the Judiciary adjudicates. A Territorial Court judge has no authority to order the Attorney General of the Virgin Islands to continue the prosecution of a criminal case in this Territory. Accordingly, petitioner has demonstrated an indisputable right to relief and the nominal respondent's clear abuse of discretion.

3. *Petitioner Lacks Any Other Adequate Means of Relief (Factor 3)*

Nominal respondent maintains that Richards cannot overcome the third factor because there is another adequate means of relief that precludes the extraordinary remedy of mandamus. Specifically, Judge Swan asserts that petitioner's immediate remedy is via 4 V.I.C. § 72b and Rule 14 of the Territorial Court. (Nominal Resp't's Mot. to Dismiss Pet. at 9.) Section 72b is entitled: "General powers and duties of presiding judge; designation of judges and division of business," with only section 72b(a)[20] addressing the

---

[19] The same result would be mandated even if Federal Rule of Criminal Procedure 48(a) applied.

[20] Subsection 72b(a) provides:

(a) The presiding judge of the territorial court shall be the administrative head of the court and shall preside at all sessions of the court which he attends. He shall be responsible for the observance by the court of the rules . . . governing the practice and procedure of the territorial court and prescribing the duties of its judges and officers and the times and places of holding court. In conformity with such rules he shall from time to time designate the judges who are to sit in each judicial division and divide the business and assign the cases among all the judges

176

administrative power of the Presiding Judge over his fellow Territorial Court judges. This administrative authority is limited to making sure that the court's rules of practice and procedure are followed, prescribing when and where court will be held, assigning cases to equalize the work load of the other judges and to "secure the prompt dispatch of the business of the court." None of these administrative powers authorizes the Presiding Judge to tell one of his co-equal colleagues how he or she is to decide a particular legal issue. The administrative power to "direct the officers and employees of the court in the performance of their duties" can have no relevance to the judges, who in any event are covered by the earlier provision described above.

Territorial Court Rule 14[21] simply implements the administrative powers described in 4 V.I.C. § 72b. The rule does not expand upon those very limited administrative powers over other Territorial Court judges granted by the statute.

The substantive issues presented by petitioner are not amenable to administrative resolution under Rule 14 or 4 V.I.C. § 72b. The substitution of a purely administrative remedy would be entirely inappropriate to the resolution of the substantive questions of law raised by this petition. As neither nominal respondent nor petitioner have identified any meaningful avenue of relief other than the petition for writ of mandamus, and we find that there is no

---

of the court in such manner as will secure the prompt dispatch of the business of the court and equalize the case loads of the several judges, taking into consideration the time required by those judges who have been designated to serve as district court commissioners to perform their duties as such. He shall supervise and direct the officers and employees of the court in the performance of their duties.

V.I.C. § 72b(a).

[21] Rule 14 provides:

Any aggrieved litigant or attorney may petition the Presiding Judge in writing for administrative resolution of any matter involving observance by judges or other judicial personnel of the Court's Rules of Practice and Procedure or the prompt dispatch of the Court's business. The petition may be in the form of a written request for relief setting forth the name of the case, the case number, the judge to which assigned, if any, and a brief description of the grievance. Upon receipt of the petition, the Presiding Judge shall review the matter and take such administrative action as is deemed appropriate. All interested parties shall be notified in writing of the decision of the Presiding Judge.

TERR. CT. R. 14.

other remedy available,[22] petitioner has satisfied the third requirement for the writ to issue.

### 4. *Petitioner Will Suffer Irreparable Injury if Error Goes Unremedied (Factor 4)*

■ Clearly, Mr. Richards will suffer irreparable injury if Judge Swan's clear abuse of discretion goes unremedied. Petitioner will still be subject to a criminal charge despite the decision of the government not to prosecute. This constitutes the kind of "irreparable injury" which satisfies the requirement for a writ of mandamus. *See Dawsey*, 931 F. Supp. at 405.

### 5. *Petitioner Does Not Have "Unclean Hands" that Would Preclude This Court from Granting the Writ of Mandamus*

Nominal respondent seeks to attribute to Richards what he characterizes as the government's "unclean hands" in taking the case and plea agreement to another judge after Judge Swan had rejected it. The argument seems to be that, even if Richards has fulfilled the four requirements necessary for a writ of mandamus, he somehow is not entitled to such extraordinary and equitable relief because of the actions of the Assistant Attorney General originally assigned to prosecute the charges against petitioner.[23]

A review of the record and the representations made by the petitioner and the government reveals the following timing of events in Territorial Court: On April 29, 1997, Judge Swan rejected the plea agreement and did not grant the government's motion to amend the information to include the misdemeanor charge of

---

[22] Although not suggested as an alternative remedy by the nominal respondent, the Court notes that an appeal is not available to petitioner. Judge Swan's refusal to rule on a motion is not a "final order" and therefore not subject to direct appeal. *See Dawsey*, 33 V.I. 110, 903 F. Supp. 878.

[23] The Government of the Virgin Islands was represented at the trial level by an Assistant Attorney General, Deborah Kleinman-Robinson, who has since moved from the Virgin Islands. To the extent that agreements and conversations between Attorney Kleinman-Robinson and counsel for petitioner are considered, we have relied on the representation of petitioner's counsel and the portions of the trial court record presented to us. We also have relied on the representations of petitioner's counsel for events that took place before Judge Swan, since counsel for the nominal respondent did not address these events in his papers. (See Petitioner's Resp. to Mot. to Dismiss ["Pet'r's Resp."] at Ex. A, Affirmation of Attorney Ann Marie Rost, counsel to petitioner at trial level.)

unlawful sexual contact.[24] Whatever else may be cloudy, it is clear that the government had determined by April 29th that it could not successfully prosecute Richards on the felony of second-degree rape, which was the only charge then pending against him.

About a month later, on May 21st, the government filed a new information charging petitioner with only the misdemeanor of unlawful sexual contact, which came before another judge for advice of rights. The prosecutor disclosed to Judge Hollar the existence of the original felony information still pending before Judge Swan. (*See* Transcript of Judge Hollar Hearing at 6.) We find no basis for the suggestion that the government attempted to "hide" the existence of the original felony information. The prosecutor further informed Judge Hollar that the petitioner wished to enter a plea of guilty to the misdemeanor charge and that one of the terms of the plea agreement was that the government would move to dismiss the felony case. (*Id.; see also* Record of Proceedings at 2, Terr. Ct. Crim. No. 195/1997 (May 29, 1997)). When it became clear after further colloquy that the misdemeanor charge arose out of the same transaction and involved the same victim as the matter pending before Judge Swan, Judge Hollar rejected the petitioner's plea and advised the government that the appropriate procedure would be to move to amend in the pending felony case, which, of course, the government had already tried to do. (Transcript of Judge Hollar Hearing at 19.) Judge Hollar continued the matter and referred the misdemeanor case to Judge Swan. (*Id.*)

■ Even if we were to agree that the government's conduct covered its hands with soil,[25] there is no basis for this Court to impute the prosecution's actions to petitioner as a bar to his request for mandamus relief. Richards, after all, was charged with

---

[24] There is some dispute whether the nominal respondent also denied the government's motion to amend the information to include the misdemeanor at this pretrial conference. (Petitioner's Resp. at 9; *see also* Transcript of May 29, 1997 Hearing, Terr. Ct. Crim. No. 195/1997 ["Transcript of Judge Hollar Hearing"] at 19.) The minutes of the pretrial hearing indicate that Richards objected to the motion to amend once the judge rejected the plea agreement. (Record of Proceedings for Apr. 29, 1997 Hearing at 2.)

[25] Without condoning the behavior of the government in this matter, this Court cannot find that the government's behavior rose to a breach of ethics or even "unclean hands." While the prosecutor may have been misguided, her frustration with Judge Swan's refusal to follow the law as decided by this Court in *Dawsey* is understandable.

a crime and was obligated to appear in court whenever a proceeding was scheduled, which included advice of rights before Judge Hollar on the new misdemeanor charge of unlawful sexual contact. He had already been held in contempt and his bail forfeited for failing to appear before Judge Swan.[26] He cannot be held responsible nor penalized for the actions of the government and thus, is not barred from obtaining the equitable relief of a writ of mandamus.

## IV. FAILURE OF COUNSEL FOR PETITIONER TO APPEAR FOR ORAL ARGUMENT

By order dated March 3, 1998, the Court scheduled this matter for consideration and for oral argument before this Panel on March 19, 1998, at 1:00 p.m. Counsel for petitioner did not appear for the scheduled argument[27] Counsel's unexplained failure to obey the Court's Order resulted in a disruption of court proceedings and the orderly administration of justice in this Court. Notably, all other parties to this matter were present at 1 p.m., as were parties appearing in other matters scheduled for oral argument. Not only the Court but all participants were inconvenienced by counsel's failure to appear. The absence of Richards' counsel added to the difficulties of this already difficult case because it deprived the Panel of the opportunity to question petitioner's counsel and further explore the issues presented in his pleadings. But for the competence of the argument and the thoroughness of the briefs and information provided by appellate counsel for the government, it is likely that we would have had to reschedule oral argument, inconveniencing the court and counsel, and further delaying the decision on this petition.

---

[26] Richards failed to appear for three pretrial conferences. He was found in contempt and his bail was forfeited and a warrant issued for his arrest. (Government's Reply to Mot. to Dismiss ["Government's Reply"] at 1.) Although the parties dispute the reasoning for petitioner's failure to appear at these conferences, Judge Swan later reinstated the forfeited bail and vacated the finding of contempt for petitioner's failure to appear. (Petitioner's Resp. at 6.)

[27] Although someone from counsel's office arrived at Court shortly after it was adjourned, no formal pleading offering an excuse or apology for disobeying the Court's scheduling order has been submitted.

An argument could be made that the failure to obey a lawful order of this Court directing counsel to appear for oral argument on the merits of his client's petition for the extraordinary writ of mandamus is a contumacious act committed in the presence of the Court and warrants punishment for contempt, without any further notice or proceeding. The Court, nevertheless, will issue an order to the firm of A.J. Weiss & Associates to show cause why it should not be held in contempt or otherwise sanctioned for its failure to obey the lawful scheduling order of this Court.

## V. CONCLUSION

The Territorial Court exceeded its rule-making authority as conferred by the Revised Organic Act when it adopted the amended Rule 128. The revised Rule 128(b) goes far beyond mere "practice and procedure" and materially impairs the constitutionally separate substantive rights, powers and duties of the Executive. Subsection (c) of the amended Rule 128 is a nullity and meaningless by definition. Accordingly, the July 15, 1997 Order of the Territorial Court adopting the amended Rule 128 will be vacated.

Pursuant to Territorial Court Rule 7, the Federal Rules of Procedure can be utilized in the Territorial Court only for matters of "practice and procedure." Under the same analysis that bars the Territorial Court's adoption of revised Rule 128(b), Rule 48(a) of the Federal Rules of Criminal Procedure cannot apply to criminal prosecutions in the Territorial Court because it would vary the substantive law of the Virgin Islands and thus goes beyond mere "practice and procedure." Under the substantive common law of the Virgin Islands which governs dismissal of criminal cases in Territorial Court, the Virgin Islands Department of Justice has the sole discretion to determine when to initiate, continue, and terminate the prosecution of criminal cases.

Finally, Mr. Richards has met his burden of establishing the factors required for the issuance of a writ of mandamus by this Court: (1) Judge Swan's refusal to grant the motion to dismiss was a clear abuse of discretion amounting to a usurpation of the constitutionally separate power of the Executive to discontinue the prosecution of a criminal case; (2) petitioner has a clear and

indisputable right to relief; (3) petitioner has no other adequate means to receive that relief; and (4) petitioner will be irreparably injured if the error goes unremedied.

Just as in *Dawsey*, this case presents "one of those 'special circumstances . . . dictated by considerations of sound judicial administration, in order to obviate further and entirely unnecessary proceedings below' in which an appellate court should take upon itself to finally dispose of the entire case." *Dawsey*, 931 F. Supp. at 406 n.21 (quoting *Grosso v. United States*, 390 U.S. 62, 71-72, 19 L. Ed. 2d 906, 88 S. Ct. 709 (1968)). Accordingly, this Court will grant the petition for writ of mandamus and direct the nominal respondent to enter an order dismissing all charges pending against petitioner Richards under the original felony information, *Government of the Virgin Islands v. Richards*, Terr. Ct. Crim. No. F402/1995.

The Court will also order the firm of A.J. Weiss & Associates, counsel for petitioner, to show cause why it should not be held in contempt for counsel's failure to obey a lawful order of this Court.

ENTERED this 19th day of February, 1999.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that the petition for writ of mandamus is GRANTED and the Territorial Court is directed to enter an order dismissing Government of the Virgin Islands v. Richards, Terr. Ct. Crim. No. F402/1995. It is further

ORDERED that Rule 128 (b) & (c) of the Territorial Court is NULL AND VOID, and that the Order of the Territorial Court of July 15, 1997, adopting an amended Rule 128 adding subparts (b) and (c) is VACATED. It is further

ORDERED that A.J. Weiss & Associates SHOW CAUSE no later than March 5, 1999, why it should not be held in CONTEMPT of this Court, or OTHERWISE SANCTIONED, for its failure to appear for oral argument on March 19, 1998.