

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2000

# In Re: LeRoy Richards

Precedential or Non-Precedential:

Docket 99-3234

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: LeRoy Richards" (2000). *2000 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 31, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-3234

IN RE: LEROY RICHARDS
Nominal Respondent, Hon. Ive A. Swan, Appellant

On Appeal From the District Court of the Virgin Islands--
Appellate Division
(D.C. Civ. No. 97-cv-00123)
Honorable Raymond L. Finch and
Honorable Thomas K. Moore, Judges of the District Court
Honorable Edgar D. Ross, Judge of the Territorial Court*

Argued: December 8, 1999

Before: BECKER, Chief Judge, SCIRICA and GARTH,
Circuit Judges.

(Filed May 31, 2000)

        LEON A. KENDALL, ESQUIRE,
          (ARGUED)
        General Counsel
        Territorial Court of the Virgin
         Islands
        Alexander Farrelly Justice Center
        P.O. Box 70
        St. Thomas
        United States Virgin Islands 00804

Counsel for Appellant Ive A. Swan

_____
* Sitting by designation.

A. JEFFREY WEISS, ESQUIRE
A.J. Weiss & Associates
9618 Estate Thomas
Tramway Building No. 2, Suite 1
Charlotte Amalie, St. Thomas
United States Virgin Islands 00802

Counsel for Appellee Leroy Richards

IVER A. STRIDIRON, ESQUIRE
Attorney General
PAMELA R. TEPPER, ESQUIRE
Solicitor General
MAUREEN P. CORMIER,
 ESQUIRE (ARGUED)
Assistant Attorney General
Office of the Attorney General of
 the Virgin Islands
Department of Justice
48B-50 Kronprindsens Gade
GERS Building, 2nd Floor
Charlotte Amalie, St. Thomas
United States Virgin Islands 00802

Counsel for Appellee Government of
the Virgin Islands

OPINION OF THE COURT

BECKER, Chief Judge.

After the Government of the Virgin Islands had brought criminal charges in the Territorial Court of the Virgin Islands against Leroy Richards for sexual misconduct, the Attorney General attempted to exercise the traditional common law power of nolle prosequi and moved to dismiss. However, the Territorial Court, suspicious of the Government's motives, resisted and scheduled a hearing to explore further the underlying facts. Before that hearing could be held, but after the submission of an affidavit from the original complainant indicating her desire to terminate the matter, Richards sought a writ of mandamus from the Appellate Division of the District Court of the Virgin

2

Islands, seeking to compel the Territorial Court to dismiss the charges against Richards. The District Court granted the writ, concluding that the local court rule under which the Territorial Court pursued the hearing violated the Revised Organic Act ("ROA"), 48 U.S.C. S 1541 et seq., because it trammeled upon the prosecutor's substantive authority under local law. The court reasoned that the ROA did not accord local courts the authority to promulgate such substantive laws, rendering the local rule used to justify the Territorial Court's conduct null and void. This appeal followed.

The appeal presents several important questions of judicial governance in the Virgin Islands. First, does the District Court have mandamus jurisdiction over the Territorial Court? We conclude that it does. The local legislature, acting under the authority granted it by the ROA, has extended appellate jurisdiction to the District Court over criminal matters other than those resolved by guilty plea. The jurisprudence is clear that jurisdiction to issue writs of mandamus lies in cases where potential jurisdiction exists, as it does here. Moreover, both local statute, see 4 V.I.C. S 34, and the All Writs Act, 48 U.S.C. S 1651, give the District Court the authority to issue writs of mandamus. We further conclude that the ROA's command that the relationship between the District Court and local courts mirror the one between state and federal courts is not a bar to the District Court's exercise of mandamus power because the District Court retains appellate jurisdiction over the Territorial Court of the Virgin Islands.

Having cleared the jurisdictional hurdle, Richards next faces the challenge of establishing that the Territorial Court exceeded its authority in scheduling a hearing on the matter of Richards's prosecution rather than promptly dismissing it as requested by the parties. We conclude that Richards has not met this burden. The Territorial Court offers two procedural rules to justify its conduct. The first justification, reliance on Local Rule 128(b), which precludes dismissal of criminal cases absent a judicial finding that the dismissal is in good faith, in the public interest, and in the interests of justice, fails because the rule explicitly

allows the local court to substitute its judgment for that of local prosecutors in deciding which cases should be prosecuted. Because this judgment is reserved to prosecutors under the old common law power of nolle prosequi, Rule 128(b) is a substantive rule of law rather than a procedural rule that the local court is authorized to promulgate under the ROA. While the Virgin Islands legislature may enact such a rule, the local court may not, making Rule 128(b) a violation of the separation of powers among the three branches of government of the Virgin Islands as delineated by Congress.

The local rules of the Territorial Court apply the Federal Rules in circumstances in which there are no valid rules to the contrary, and hence the Territorial Court's actions may possibly be justified by Fed. R. Crim. P. 48(a), which provides that prosecutions shall only be dismissed by leave of the court. In light of the traditional common law power of nolle prosequi that allowed prosecutors total discretion in determining which cases to pursue, the argument that this rule also has a substantive component is not without force. We believe, however, that though Rule 48(a) does not confer unfettered discretion upon courts to resist motions to dismiss, it does have a procedural component that allows inquiry into the circumstances surrounding a dismissal in a manner that does not sufficiently intrude upon the prosecutorial domain to be viewed as a substantive rule.

In this case, the Territorial Court did not deny the motion to dismiss but merely scheduled a hearing. In light of a court's ability to use Rule 48(a) to let "sunshine" into areas where local authorities may be suspected of inappropriate dealings, we are not persuaded that the Territorial Court behaved in a manner that required the extraordinary remedy of mandamus. Accordingly, we will vacate the order of the District Court with directions to remand the matter to the Territorial Court. We do not do so, however, to give that court carte blanche over prosecutorial decisions. The Territorial Court may conduct a hearing on the circumstances surrounding the Government's requested dismissal before it surrenders jurisdiction, but it lacks the power to compel the Government to take further steps to prosecute Richards.

I.

In October 1995, Richards was charged by information with the felony of second degree rape under 14 V.I.C. S 1702. In April 1997, the Government amended the information to include the misdemeanor of unlawful sexual contact under 14 V.I.C. S 1709. On April 29, 1997, the parties entered into a plea agreement pursuant to which Richards would plead to the misdemeanor in return for dismissal of the felony charges. The agreement was presented to Judge Ive Swan of the Territorial Court, but, based on the seriousness of the conduct initially alleged, he rejected it and set the case for jury selection on June 2.

On May 21, the Government filed a new complaint, arising out of the same incident, that contained only the misdemeanor charge. At arraignment on the new complaint, Richards attempted to enter a plea of guilty. The presiding judge, Territorial Court Judge Brenda Hollar, became aware of the parallel case pending before Judge Swan. Displeased with what she perceived to be judge shopping, she referred the matter to Judge Swan. On the same day, the Government filed a motion requesting that Judge Swan dismiss the original charges because the Government lacked the ability to prove all the elements beyond a reasonable doubt. Several weeks later, the Government moved to dismiss the newer (misdemeanor only) charge as well.

On June 12, Judge Swan held a hearing at which the prosecutor requested that the charges be dropped in the "interests of justice." Judge Swan refused to do so without first examining the purported victim and prosecutors, though he indicated that if the victim made clear that she did not want the case to proceed and was aware of the Government's plans to drop the case, he would end the matter. He also expressed concern with the seriousness of the crime charged and about what he perceived to be the Government's attempt to circumvent his refusal to accept the earlier plea agreement. Judge Swan scheduled a hearing for July 17. On June 18, the Government and Richards filed a joint motion to dismiss that reiterated the prosecutor's conclusion that the case lacked merit. The motion was accompanied by supporting affidavits from the

5

purported victim and her mother that made clear that they did not wish the case to be prosecuted and that the purported victim would not testify against Richards.

On July 2, Richards moved to stay the July 17 hearing and to dismiss the case. He also claimed that the original facts, as alleged, had been determined to be false. The Government's response, filed on July 14, concurred with Richards's motion and urged the court to not require the purported victim and her mother to face the burden of having to appear in court.

On July 15, 1997, the Territorial Court promulgated a new local rule that amended Local Rule 128 to include new subsections (b) and (c). These amendments empowered the Territorial Court to refuse to dismiss cases unless the local court determined that the dismissal is "in good faith, in the public interest, and in the interest of justice." Also on July 15, Richards filed a petition in the District Court of the Virgin Islands for a writ of mandamus and for a stay of the July 17 hearing. The District Court granted the stay the next day.

On March 19, 1998, the Appellate Division of the District Court heard argument. Eleven months later, the court granted the writ and ordered the counts against Richards dismissed. It also declared the new Territorial Court Rule 128(b) to be null and void, holding that the Territorial Court had exceeded its rulemaking authority when it promulgated Rule 128(b). The Court concluded that the executive branch in the Virgin Islands has exclusive control of the prosecutorial function and that by transferring discretion over the termination of prosecutions to the local court, Rule 128(b) was a substantive rule that was disallowed by the ROA, which allows local courts to promulgate only procedural rules. The District Court also rejected the alternative argument that the refusal to dismiss could be justified by Federal Rule of Criminal Procedure 48(a), applied under Territorial Court Rule 7, which invokes the federal rules of procedure in the absence of local rules to the contrary. The court concluded that the Territorial Court's application of Rule 48(a) would have similarly been in excess of its rulemaking power. Having determined that Judge Swan's conduct overstepped his authority, the

District Court ruled that Richards had met the other conditions for receiving the extraordinary remedy of mandamus and issued the writ. This appeal followed.

Our jurisdiction is based on 28 U.S.C. S 1291. We discuss the District Court's jurisdiction to issue the mandamus petition below. Our review of the jurisdictional matters raised by this case is plenary. See Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1002 (3d Cir. 1992). We review the discretionary elements of the District Court's grant of a writ of mandamus for abuse of discretion; our review over the non-discretionary elements of the grant is plenary. See Stehney v. Perry, 101 F.3d 925, 929 (3d Cir. 1996).

II.

Determining whether the Appellate Division of the District Court possessed the jurisdiction to issue the writ in the first instance requires three levels of analysis. We must first consider whether the District Court has the requisite jurisdiction over the Territorial Court to sustain the exercise of mandamus power. If so, we need to decide whether it possesses the statutory authority to issue writs of mandamus. Finally, we must determine whether the issuance of a writ of mandamus comports with the ROA's dictate that the relations between the District Court and the Territorial Court reflect those between federal and state courts.

A.

Courts established by the Congress have authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. S 1651. Thefirst question before us is whether the District Court has any jurisdiction in aid of which it could have issued a writ of mandamus upon the Territorial Court. Untangling the issue requires that we examine the ROA, which governs the territory's court structure. See 48 U.S.C. S 1541 et seq. We have elucidated the architecture of the ROA elsewhere, see Brow

7

v. Farrelly, 994 F.2d 1027 (3d Cir. 1993), and need not rescribe that discussion save for a brief summary.

The ROA extends appellate jurisdiction over local courts to the Appellate Division of the District Court to the extent allowed by local law (subject to the proviso that the legislature may not preclude District Court review of federal matters). See 48 U.S.C. S 1613a(a). The Appellate Division is generally composed of the two judges of the District Court plus a third judge sitting by designation, who usually comes from the Territorial Court. See 48 U.S.C. SS 1613a, 1614. Though the local legislature has the right to establish a territorial appellate court, it has thus far not elected to do so. In criminal matters, the Virgin Islands legislature has extended appellate jurisdiction to the District Court in "cases in which the defendant has been convicted, other than on a plea of guilty." 4 V.I.C. S 33.

The Territorial Court, appearing here through Judge Swan and represented by the Court's General Counsel, contends that the District Court lacked subject matter jurisdiction to issue the writ. More specifically, because Richards was never convicted, it maintains that the District Court lacked potential jurisdiction and, consequently, the ability to issue a writ in aid of non-existent jurisdiction. We disagree. Appellate courts have the power to issue writs of mandamus prior to the filing of appealable orders when the conditions requiring the writ exist. Cf. Helstoski v. Meanor, 442 U.S. 500, 506-08 (1979) (mandamus does not lie when direct appeal is available); Pennsylvania v. Newcomer, 618 F.2d 246, 249 (3d Cir. 1980) (declaring mandamus should be avoided when appeal is available through collateral order doctrine). Indeed, the mandamus power would mean little if it could not be invoked until the filing of an appealable order. Were that so, litigants would rely exclusively on the right to appeal, and mandamus power would be superfluous. More specifically, jurisdiction to issue writs of mandamus under 28 U.S.C. S 1651 lies in cases in which potential appellate jurisdiction exists. See, e.g., In re Chambers Dev. Co., 148 F.3d 214, 223 n.6 (3d Cir. 1998) ("Under the All Writs Act, the writ of mandamus can be issued where `necessary or appropriate in aid of[the court's] jurisdiction.' 28 U.S.C. S 1651(a). However, to

8

satisfy the jurisdictional prerequisite, it is not necessary that the action in which the writ is sought be pending in the court asked to issue the writ. Rather, it is only required that the case may at some future time come within the court's appellate jurisdiction.") (citation omitted); Hahnemann v. Univ. Hosp., 74 F.3d 456, 460 (3d Cir. 1996); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 482 (3d Cir. 1995).

Though mandamus is usually difficult to obtain, courts sitting in their appellate capacity have heard mandamus petitions filed by defendants over pretrial criminal proceedings. See, e.g., Hilbert v. Dooling, 476 F.2d 355, 362 (2d Cir. 1973) (en banc) (employing mandamus to compel district court to dismiss indictment); 16 Wright, Miller, & Cooper, Federal Practice and Procedure S 3936.1 (2d ed. 1996) (collecting cases). Once jurisdiction is established, the ability to issue writs in aid of potential appellate jurisdiction sweeps broadly. "The power to issue such writs in aid of our potential appellate jurisdiction comprehends our responsibility for the orderly and efficient administration of justice within the circuit." New York v. U.S. Metals Ref. Co., 771 F.2d 796, 801 (3d Cir. 1985) (quoting Rodgers v. U.S. Steel Corp., 508 F.2d 152, 161 (3d Cir. 1975)).

The Territorial Court suggests that such authority should be curtailed in this case, given the District Court's inability to prescribe rules of practice and procedure for the Territorial Court and its inability to regulate the admission of attorneys to the Virgin Islands bar. As important as these functions are, we do not consider them as relevant to the question at hand as the District Court's main role with respect to the Territorial Court, that of hearing appeals. It is this authority that gives rise to the mandamus power, not the authority referred to by the Territorial Court.

In sum, the District Court had potential appellate jurisdiction over the case as Richards could have gone to trial and been convicted. The Territorial Court points to no cases that distinguish the current facts from the general rule that potential appellate jurisdiction is sufficient for the exercise of mandamus power.

9

B.

The next question is whether the District Court, as a non-Article III court, had the statutory authority necessary to issue a writ of mandamus in light of the structure established by the Revised Organic Act. The issue seems quite straightforward insofar as the Virgin Islands legislature plainly intended to extend all writs power to the District Court. See 4 V.I.C. S 34 ("The district court may from time to time prescribe rules, consistent with law and with the rules adopted by the Supreme Court, for the conduct of its business and may issue writs of habeas corpus, review and prohibition and all other writs and make mandatory orders and all other orders necessary or appropriate in aid of its original or appellate jurisdiction and agreeable to the usages and principles of law.") (emphasis added). Moreover, we have previously assumed that mandamus authority properly lies with the District Court of the Virgin Islands, see Brow v. Farrelly, 994 F.2d 1027, 1036 n.9 (3d Cir. 1993), and the District Court has so exercised it, see Dawsey v. Gov't of the Virgin Islands, 931 F. Supp. 397 (V.I. App. Div.), aff 'd 106 F.3d 384 (3d Cir. 1996).

The Territorial Court contends, however, that the Virgin Islands legislature lacked the authority to extend all writs power to the District Court. This argument is based on the fact that the ROA only permits the legislature to prescribe the District Court's appellate jurisdiction. See 48 U.S.C. S 1613a. The Territorial Court maintains that this limitation is fatal to the exercise of mandamus power because appellate jurisdiction is not inclusive of mandamus power. For support of this proposition, it points to Congress's making separate provisions for all writs jurisdiction and the appellate power when it established the authority of the federal courts of appeals. Compare 28 U.S.C.SS 1291, 1292 (delineating appellate jurisdiction of courts of appeals), with 28 U.S.C. S 1651 (delineating all writs power of federal courts).

The thrust of the Territorial Court's objection, that all writs power in aid of the appellate power is not synonymous with the appellate power and therefore requires an independent statutory basis, carries surface

10

appeal. We note in this regard that we have been reluctant to recognize extensions to the District Court by the Virgin Islands legislature of powers not explicitly permitted by the ROA. See Moravian Sch. Advisory Bd. of St. Thomas v. Rawlins, 70 F.3d 270 (3d Cir. 1995) (holding, in light of Federal Rule of Civil Procedure that required dismissal and absence of authority in ROA, district court lacked power to transfer power case improperly filed in District and not Territorial Court notwithstanding authorization by the territorial legislature). We need not, however, grapple with this issue. Whether appellate power inherently includes mandamus power, is irrelevant to the outcome, for Congress has granted all writs authority to all courts "established by Act of Congress." The law makes no distinction between Article III courts and those with jurisdiction over territories that are established pursuant to Congress's authority under Article IV S 3 of the Constitution.

We discern no reason to doubt that the All Writs Act means what it says, and therefore applies to all courts established by Congress, even if they are not of the Article III variety. This conclusion is not mere intuition. In an analogous setting, the Supreme Court has declared that military courts have all writs power because they are courts created by congressional statute. See Noyd v. Bond, 395 U.S. 683, 695 n.7 (1969).[1] The same has been held of the Court of Veterans Appeals. See Cox v. West, 149 F.3d 1360, 1363 (Fed. Cir. 1998) ("[T]here is no qualifying language in

_____

1. The Court noted:

     Since the All Writs Act applies by its terms to any`courts
     established by Act of Congress,' and since the Revisers of 1948
     expressly noted that `[t]he revised section extends the power to
issue
     writs in aid of jurisdiction, to all courts established by Act of
     Congress, thus making explicit the right to exercise powers implied
     from the creation of such courts,' we do not believe that there can
     be any doubt as to the power of the Court of Military Appeals to
     issue an emergency writ of habeas corpus in cases . . . which may
     ultimately be reviewed by that court. A different question would,
of
     course, arise in a case which the Court of Military Appeals is not
     authorized to review under the governing statutes.

Id.

11

title 28 which limits the term `all courts established by Act of Congress' to Article III courts or specifically excludes the Court of Veterans Appeals. On the contrary, when Congress wishes to specify a subset of courts, it does so explicitly."). Similarly, the Court of Appeals for the Ninth Circuit has recognized that the appellate division of the District Court of Guam has authority to issue a writ of mandamus to the Guam Superior Court under the All Writs Act. See Apusento Garden (Guam), Inc. v. Superior Court of Guam, 94 F.3d 1346, 1349 (9th Cir. 1996) (citing Cruz v. Abbate, 812 F.2d 571, 573 (9th Cir. 1987)). In sum, it is clear that the Appellate Division of the District Court of the Virgin Islands has the power to issue writs of mandamus when it possesses the requisite appellate jurisdiction.

C.

The final alleged barrier to the District Court's mandamus jurisdiction raised by the Territorial Court emerges from the ROA's mandate that relations between the District Court and the Territorial Court mirror that between federal and state courts.

The ROA states:

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings . . . .

48 U.S.C. S 1613.

The Territorial Court argues that because federal courts generally cannot issue mandamus orders to their state counterparts, see In re Grand Jury Proceedings , 654 F.2d 268, 278 (3d Cir. 1981), the District Court could not visit a mandamus order upon the Territorial Court. This argument is unpersuasive. As explained supra in Part II.A,

12

the jurisdiction to issue writs of mandamus to another court exists when a court has potential appellate jurisdiction. While in the ordinary course of events, federal courts (except for the Supreme Court) lack appellate jurisdiction over their state counterparts, thus making writs of mandamus generally inappropriate, the relationship between the District Court of the Virgin Islands and the Territorial Court of the Virgin Islands differs from that between a federal and state court in one key respect-- until the Virgin Islands legislature creates a local appellate court, the District Court has appellate jurisdiction over the Territorial Court. Because mandamus lies in aid of potential appellate jurisdiction, the District Court can issue a writ of mandamus to the local court notwithstanding the ROA's command that their relations be those of state and federal courts.

Any lingering doubt in this regard is resolved by precedent from the United States Supreme Court. That federal court also has appellate jurisdiction over the state courts. Consistent with this jurisdiction, the Supreme Court has permitted the filing of writs of mandamus against state courts. See General Atomic Co. v. Felter, 436 U.S. 493, 497 (1978) (granting leave to file writ of mandamus against state court). In a similar vein, the Supreme Court has proclaimed its ability to issue injunctions to stay state court proceedings in circumstances where lower federal courts cannot. See Atlantic Coast R.R. Co. v. Bhd. of Locomotive Eng'rs , 398 U.S. 281, 296 (1970) ("Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader authority to issue injunctions `necessary in aid of its jurisdiction.' "). Under certain circumstances, the Court has also issued stays of state court injunctions in matters that could eventually reach the Supreme Court on appeal. See, e.g., CBS, Inc. v. Davis, 510 U.S. 1315, 1318 (Blackmun, Circuit Justice, 1994) (declaring that stay of state lower court injunction is appropriate under All Writs Act because injunction conflicts with Court precedent, could warrant certiorari, and would cause irreparable harm if it took effect).

13

For these reasons, we are satisfied that the District Court had the requisite jurisdiction necessary to issue a writ of mandamus to the Territorial Court. We now turn to the question whether the writ was properly granted.

III.

Given their extraordinary character, writs of mandamus are not to be issued lightly. "[O]nly exceptional circumstances amounting to a judicial `usurpation of power' will justify the invocation of this extraordinary remedy." Citibank, N.A. v. Fullam, 580 F.2d 82, 86 (3d Cir. 1978) (quoting Will v. United States, 389 U.S. 90, 95 (1967)). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 308 (1989) (quoting Roche v. Evaporated Milk Assn., 319 U.S. 21, 26 (1943)). Therefore, only clear errors of law that"at least approach the magnitude of an unauthorized exercise of judicial power, or a failure to use that power when there is a duty to do so" require the writ. Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988).

A.

The contention that the Territorial Court usurped power in not dismissing the charges against Richards is founded on the venerable common law doctrine of nolle prosequi. Under this doctrine, prosecutors have the power to decide whether to proceed with the prosecution of a charged defendant. Absent a controlling statute or rule to the contrary, this power resides solely in the prosecutor's hands until the impanelment and swearing of a jury. See 21 Am. Jur. 2d S 779 (1998). This common law power of prosecutors had long been the rule in federal courts. For example, in Confiscation Cases, 74 U.S. (7 Wall.) 454, 457 (1868), the Supreme Court declared:

> Public prosecutions, until they come before the court to which they are returnable, are within the exclusive

14

> direction of the district attorney, and even after they are entered in court, they are so far under his control that he may enter a nolle prosequi at any time before the jury is empaneled for the trial of the case, except in cases where it is otherwise provided in some act of Congress.

We discuss the impact the promulgation of Fed. R. Crim. P. 48(a) has had on this principle infra in Part III.C.

The Territorial Court argues that substantive common law does not govern the issuance of dismissals in the Virgin Islands. Our analysis of the Territory's laws and precedents persuades us otherwise. In the absence of superseding rules to the contrary, the common law prevails in the Virgin Islands. See 1 V.I.C. S 4. The common law's vesting of discretion in the hands of the prosecutor has been previously recognized in Virgin Islands jurisprudence. See Tonkin v. Michael, 349 F. Supp. 78 (D. V.I. 1972). Tonkin is also notable insofar as it rescribes a wonderful--and highly apposite--anecdote from the English Common Law, which we set forth in the margin.2 Of course, the Virgin Islands legislature could enact a law or rule to alter or eradicate the nolle prosequi power. Until it does so, however, local prosecutors retain the common law nolle prosequi  power.

_____

2. The Tonkin opinion recounts:

> An incident related in 2 Campbell's Lives of the Chancellors 173 is of interest in this connection. After he had ordered the imprisonment of a group of fanatics called "Prophets" for seditious language, Lord Holt was visited by Lacy, one of their friends, who informed a servant that he carried a message "from the Lord God." Lacy was admitted and told Lord Holt: "I come to you a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for John Atkins, his servant, whom thou has cast into prison." Lord Holt replied: "Thou art a false prophet, and a lying knave. If the Lord God had sent thee it would have been to the Attorney-General, for He knows that it belongeth not to the Chief Justice to grant a nolle prosequi; but I, as Chief Justice, can grant a warrant to commit thee to bear him company."

Tonkin, 349 F.Supp. at 81-82 n.9 (citing Justice Traynor in People v. Sidener, 375 P.2d 641, 642, n.4 (Cal. 1962)).

The Territorial Court rejoins that Judge Swan's conduct was justified by Local Rule 128(b) and, alternatively, Fed. R. Crim. P. 48(a), which applies to the Territorial Court through operation of Local Rule 7. We turn first to consideration of Rule 128(b).

B.

On July 15, 1997, prior to the District Court's stay of Judge Swan's hearing, the Territorial Court amended local Rule 128 to include subsection (b), which states:

> No criminal case filed in the court, including traffic citations, shall be dismissed upon motion by any party except upon a determination by the Court that the dismissal is in good faith, in the public interest, and in the interest of justice.

The Territorial Court submits that Rule 128(b) justifies Judge Swan's conduct in not dismissing the charges and in scheduling the July 17 hearing. The Government responds that Rule 128(b) exceeds the Territorial Court's power under the ROA. This argument demands contemplation of the lines separating substance from procedure and the legislative from the judicial.

The ROA provides that "[t]he rules governing the practice and procedure of the courts established by local law. . . shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. S 1611(c). It is clear from this provision that the rules promulgated by the Territorial Court must be respectful of the legislature's power to enact substantive law. We have held that "the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands." Smith v. Magras, 124 F.3d 457, 465 (3d Cir. 1997). It naturally follows that the Territorial Court cannot exercise legislative powers. "[A]s a general rule inherent in the American constitutional system . . . unless otherwise expressly provided or incidental to the powers conferred . . . the judiciary cannot exercise either executive or legislative power." Id. at 465–66 (quoting Springer v. Gov't of the Philippine Islands, 277 U.S. 189, 201–02 (1928)). Even if it could, the Virgin Islands legislature has not ceded any of its

16

substantive lawmaking power to the Territorial Court.3
Therefore the question is whether Rule 128(b) is an
impermissible substantive rule of law or a procedural rule
that is authorized by the Revised Organic Act.

As discussed above, see supra Part III.A, at common law
the power of prosecutors to determine whether to try a
defendant prior to the impanelment of a jury bordered on
the absolute. Under both statute and precedent, that would
appear to be the rule that holds in the territory. See 1
V.I.C. S 4 ("The rules of the common law, as expressed in
the restatements of the law . . . and to the extent not so
expressed, as generally understood and applied in the
United States, shall be the rules of decision in the courts of
the Virgin Islands in the cases to which they apply, in the
absence of local laws to the contrary."); Tonkin v. Michael,
349 F. Supp. 78 (D. V.I. 1972). By commanding and
empowering a court to determine whether the dismissal of
a prosecution would be in the public interest and the
interest of justice, Rule 128(b) licenses the substitution of
the Territorial Court's judgment for that of the prosecutor.
This is not, therefore, a rule of "practice and procedure"
within the scope of the local courts' rulemaking ability
under the ROA, but a substantive rule of law. The ROA
vests the authority to enact such laws in the legislature.
While the local judiciary may certainly petition the
legislature for expanded powers, it may not unilaterally vest
them upon itself.

To be sure, the line separating procedure from substance
is often unclear. "The test must be whether a rule really
regulates procedure,--the judicial process for enforcing
rights and duties recognized by substantive law . . . ."
Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941). Rule 128(b),
however, does not enforce a right or duty recognized by
substantive law, but rather transfers discretion that was

_____

3. The Territorial Court cites to 4 V.I.C. S 243(8), but that statute only
grants the local courts power "[t]o amend and control its process and
orders so as to make them conformable to law and justice." Adjusting
process to conform with "law" gives no hint that any lawmaking
functions have been transferred to the judicial branch, and indeed,
suggests that they continue to reside solely with legislative authorities.

once wielded by the local prosecutor into judicial hands under novel standards promulgated in Rule 128(b) itself: the court must determine that dismissal "is in good faith, in the public interest, and in the interest of justice." In other words, the rule's standard of judgment does not look to preexisting rights and duties that Rule 128(b) may have been designed to enforce. Rather, it looks to the judgments of the same court that promulgated the rule. The Territorial Court thus seeks to expand its own power at the expense of local prosecutors. This it cannot do, and the District Court properly held Rule 128(b) to be void.

C.

Because Rule 128(b) is a nullity, Territorial Court Rule 7, which applies the Federal Rules of Criminal Procedure to cases in which there is no local rule to the contrary, points us to Fed. R. Crim. P. 48(a). First promulgated in 1944, Rule 48(a) provides (with emphasis added): "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

Like Rule 128(b), Rule 48(a) appears to alter the traditional common law nolle prosequi power of executive authorities by requiring "leave of the court" to dismiss a prosecution. In contrast to Rule 128(b), and as discussed in further detail below, the actual standards for when a court may refuse a motion to dismiss under Rule 48(a) are unclear. In the Government of the Virgin Islands' view, whatever the standards are, Rule 48(a) also ventures into the substantive realm. The Government argues that Rule 48(a) cannot justify the Territorial Court's failure to dismiss the charges against Richards for the same reasons that Rule 128(b) cannot: If Rule 128(b) violates the Virgin Islands' separation-of-powers scheme, then the same can also be said of the application of Rule 48(a) as a rule promulgated by the Territorial Court, because it too

18

eliminates the absolute discretion of prosecutors to decide whether or not to pursue their cases.4

The Territorial Court contends that even if the common law practice of nolle prosequi has been the substantive common law of the Virgin Islands, it has been displaced by past practices to the contrary (as reflected by District Court's use of Rule 48(a) in its opinion in Dawsey v. Gov't of the Virgin Islands, 931 F. Supp. 397 (V.I. App. Div.), aff 'd 106 F.3d 384 (3d Cir. 1996)). This argument is unavailing, however, because if Rule 48(a) cannot be promulgated by a Virgin Islands court, past practices to the contrary are irrelevant. More importantly, whatever the adherence to the common law in the Virgin Islands in the past, local statute expressly provides that common law practices are to prevail in the absence of law to the contrary. See 1 V.I.C. S 4.

Though recognizing the common law background, we must acknowledge the force of the argument that Rule 48(a) must be a procedural rule because rules promulgated under the aegis of the federal Rules Enabling Act ("REA") are to be procedural, rather than substantive, in character. See 28 U.S.C. S 2072 (providing that promulgated procedural rules "shall not abridge, enlarge or modify any substantive right.").5 Rule 48(a), like all federal rules of

_____

4. The Territorial Court argues that to hold Rule 48(a) inapplicable would violate the Supremacy Clause. This argument is plainly mistaken. Congress never applied the rule to the Virgin Islands courts. Rather, the Territorial Court chose to adopt the federal standard and thus we interpret Rule 48(a) in accordance with federal precedent. Any authority the federal rules have over territorial courts is a function of territorial law that must be consistent with the ROA. There is no conflict with federal law because federal law has delegated to the territory the ability to determine its rules for itself. Although the Territorial Court may adopt whatever rules it chooses, those rules must still comport with the ROA.

5. At the time Rule 48(a) was promulgated, the enabling statutory language was contained in 18 U.S.C. S 687 (1946) (current version at 28 U.S.C. S 2072) and read: "The Supreme Court of the United States shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict . . . ." Though the law lacked the later caveat concerning the contraction or enlargement of substantive rights, its focus remained on enacting rules of "procedure" not substance. In this regard, the law resembled the relevant portions of the ROA, which only allows local courts to enact rules that govern "practice and procedure." 48 U.S.C. S 1611(c).

procedure that have been applied by the courts since the passage of the REA, enjoys an arguable presumption of regularity as a procedural rule. Moreover, the Territorial Court conceded at oral argument that there is likely little a court can do to compel action even if it denies a Rule 48(a) motion. Cf. United States v. Hamm, 659 F.2d 624, 632 (5th Cir. Unit A Oct. 1981) (en banc). Even if we were to uphold the Territorial Court's failure to grant the motion to dismiss, therefore, that court would seem to have few options if the day of trial came, and the prosecution refused to call witnesses or otherwise go forward with its case. The substantive bite of the rule, therefore, appears to be hampered by the dullness of its teeth.

Yet Rule 48(a) is commonly seen as affecting the common law power of prosecutors, irrespective of whether it is authorized solely as a procedural rule. See 1944 Advisory Committee Notes on Adopting Rule 48; 3A Wright, Fed. Practice & Procedure S 812 (2d ed. 1982). One possible route out of this conundrum is to argue that whatever substantive effect the Rule possesses emanates from Congress because the Rules Enabling Act contains a procedure through which proposed new rules are submitted to Congress and require at least a seven-month delay before they can take effect, thus providing some check on Congress's potential delegation of its substantive lawmaking authority to the judiciary. See 28 U.S.C. S 2074.[6] In contrast, no similar mechanism exists in the Virgin Islands. But this argument is unsatisfactory. The Rules Enabling Act's provision for submission to Congress does not give Congress any authority that it does not already have. Congress can always vote to abrogate a rule promulgated by the judiciary. Neither the delay in the rules' taking effect nor the submission to Congress requirement creates a veto by silence. Congress must affirmatively legislate to obviate a properly submitted rule.

The upshot is that Rule 48(a) is a strange animal. It reads like a procedural rule, but by interposing a

_____

6. At the time of Rule 48(a)'s promulgation, the rule was not to take effect until after the conclusion of the session of Congress in which it had been submitted. See 18 U.S.C. S 687 (1946).

20

discretionary act by a court between a prosecutor's decision to drop a case and ultimate dismissal, it is adorned with unmistakable substantive trappings. Though this potential problem with Rule 48(a) is not a constitutional separation-of-powers problem but one of a possible violation of the Rules Enabling Act, it is a problem nonetheless.

We need not, however, engage the full expanse of Rule 48(a) in this case. First, as discussed above, the substantive reach of the rule appears to be effectively curtailed by the fact that even if the judge denies the motion to dismiss, there seems to be no way to compel the prosecutor to proceed. Second, this case does not present a facial challenge to local rule 7, which applies Rule 48(a) to the Territorial Court. Rather, we are reviewing the conduct of the Territorial Court and determining whether it rose to a level necessitating the extraordinary remedy of mandamus. We must therefore consider the viability of Rule 48(a) within a specific factual context, which may contain elements that give Rule 48(a)'s application in this instance a procedural character because the rule was employed in service of substantive rights and duties that exist independently of the rule's text.

D.

Rule 48(a)'s text does not share the flaw of Rule 128(b) insofar as it does not set forth substantive standards that allow the Territorial Court to apply its judgment for what constitutes the public interest in contravention of the judgment of local prosecutors. Indeed, courts have generally viewed their role in granting leave to dismiss under 48(a) to be a limited one, because "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made or whether to dismiss a proceeding once brought." Newman v. United States, 382 F.2d 479, 480 (D.C. Cir. 1967).

Though this Court has not ruled on the standards that should be employed in determining whether a judge abuses his or her discretion in denying a motion under Rule 48(a),

21

other courts have opined on the subject. The Supreme Court has suggested that the rule exists to prevent harassment by prosecutors, though it has been vague on what other circumstances may justify its application.

> While [Rule 48(a)] obviously vest[s] some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the `leave of court' requirement is apparently to protect a defendant against prosecutorial harassment . . . . But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977) (per curiam) (citations omitted).

The jurisprudence in the courts of appeals has not been significantly clearer, save for the proposition that refusal to dismiss is appropriate only in the rarest of cases. As one of our sister courts has summarized:

> Rule 48(a) is primarily intended to protect a defendant from prosecutorial harassment, Rinaldi v. United States, 434 U.S. 22, 31, 98 S.Ct. 81, 86, 54 L.Ed.2d 207 (1977) (per curiam), but it also permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts. See United States v. Hamm, 659 F.2d 624, 628–29 (5th Cir.1981); United States v. Cowan, 524 F.2d 504, 512–13 (5th Cir.1975), cert. denied, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976); cf. United States v. Derr, 726 F.2d 617, 619 (10th Cir.1984). A court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is `clearly contrary to manifest public interest.' Cowan, 524 F.2d at 513; see also [United States v.] Miller , 722 F.2d [562,] 566 [9th Cir. 1983]; United States v. Salinas, 693 F.2d 348, 352 (5th Cir.1983); Hamm, 659 F.2d at 628.

United States v. Carrigan, 778 F.2d 1454, 1463 (10th Cir. 1985).

22

The concern of prosecutorial harassment speaks to the danger that a prosecutor will engage in a cycle of levying and dismissing charges against a particular defendant. The other concerns are harder to describe. Courts have equated a dismissal that is clearly contrary to the public interest with one in which the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial. See Hamm, 659 F.2d at 630. But Judge Swan's concerns in this case were not of an unfairly harassed defendant. Rather, his suspicions appear to have been aroused by the Government's shift in position as to the merits of Richards's prosecution after Richards switched from a public defender to private counsel. These suspicions were compounded by the Government's perceived attempt at judge-shopping.[7]

If one adheres to the view that Rule 48(a) exists solely to prevent harassment of a defendant, then the Territorial Court may have exceeded its authority in not promptly dismissing the case against Richards. Indeed, several courts have reserved the question of whether, under Rule 48(a), a judge may ever deny an uncontested motion to dismiss. See Rinaldi, 434 U.S. at 30; United States v. Gonzalez, 58 F.3d 459, 461 (9th Cir. 1995). We note, however, that when the mandamus petition was presented to the District Court, the Territorial Court had not denied the motion for dismissal. This is significant. Several courts have indicated that mandamus is not the proper vehicle for challenging a lower court's refusal to dismiss under Rule 48(a) when the challenged court has actually issued an order susceptible to review through other means. For example, the Eighth Circuit employed the collateral order doctrine, rather than mandamus, to reverse a district court order that denied a Rule 48(a) motion to dismiss in United States v. Dupris, 664 F.2d 169, 172-73 (8th Cir. 1981). Similarly, in United States v. Cowan, 524 F.2d 504, 505 (5th Cir. 1975), the Fifth Circuit reversed a district court order denying a Rule 48(a) dismissal motion on appeal and did not reach the question whether mandamus could be employed for the same purpose. This case, however, presents different facts from cases where review occurred

_____

7. In chronicling these suspicions, we intimate no view on their merits.

23

on appeal. Here, Richards moved for a writ of mandamus before the Territorial Court issued any rulings. Judge Swan never actually ruled, either adversely or positively, on the motions to dismiss the charges against Richards. Rather, he merely scheduled a hearing to probe further into the circumstances surrounding the Government's reasons for seeking dismissal.

The question before us under the circumstances, therefore, is not whether Judge Swan could properly have used his power under Rule 48(a) to deny a motion to dismiss, but whether Judge Swan's power under that rule was so circumscribed as to prohibit his conducting a hearing on the circumstances surrounding the Government's requested dismissal. We think that it was not. We conclude that even if it would have been an abuse of discretion on his part to ultimately deny the motion to dismiss, Judge Swan had discretion to hold a hearing on the parties' claims, especially in light of the checkered course of the case up to that point. See United States v. Salinas, 693 F.2d 348, 352 (5th Cir. 1982) ("Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons--reasons that constitute more than `a mere conclusory interest.' ") (citation and footnote omitted); 3A Wright, Federal Practice & Procedure S 812 (2d ed. 1982) ("Since the court must exercise a sound judicial discretion in considering a request for dismissal, it must have factual information supporting the recommendation."); United States v. Greater Blouse, Skirt & Neckwear Contractors Assoc., Inc., 228 F. Supp. 483, 486 (S.D.N.Y. 1964); United States v. Shanahan, 168 F. Supp. 225, 229 (S.D. Ind. 1959); United States v. Doe, 101 F. Supp. 609, 611 (D. Conn. 1951). Moreover, we are unaware of any binding precedent that a mandamus order can or should issue before the court has ruled on the 48(a) issue.8

_____

8. That does appear to have been the procedural posture in Dawsey v. Gov't of the Virgin Islands, 931 F. Supp. 397 (V.I. App. Div.), aff 'd 106 F.3d 384 (3d Cir. 1996). This Court affirmed Dawsey without opinion, hence that case does not bind us under our Internal Operating Procedures. See, e.g., United States v. Breyer, 41 F.3d 884, 892 n.11 (3d Cir. 1994).

24

The Government contends that Judge Swan made clear that he would not dismiss the matter unless he independently reached the conclusion that the initial allegations were untrue, and that he was, therefore, substituting his judgment for that of the prosecutor. We do not, however, view a judge's statements in the course of proceedings as a final determination of a motion. How the judge initially perceived the case is irrelevant to the question whether he had issued an appealable order. While Judge Swan's comments may have been premature and perhaps reflected an overestimation of his authority (along with his irritation with the Government), the facts clearly demonstrate that he had not ruled on the Government's motion when the writ of mandamus was filed. We conclude that a court should have the opportunity to consider and issue its order before a mandamus petition is filed. By granting first a stay of the scheduled hearing and then issuing a writ of mandamus, the District Court deprived Judge Swan of the opportunity to issue a ruling.

On the facts before us, therefore, application of Rule 48(a) does not violate the separation-of-powers system of the ROA. We conclude that the Territorial Court's mere effort to obtain information surrounding the prosecution's attempted dismissal of Richards's information does not suffice to work a substantive change in the prosecution's power of nolle prosequi. This conclusion is informed by the explanation of how Rule 48(a) can properly be used to justify a judge's scheduling a hearing on the motion before ruling, a matter to which we now turn.

E.

Even though a judge's discretion under Rule 48(a) is severely cabined, the rule may serve an important interest as an information- and accountability-producing vehicle. A judge who hears a Rule 48(a) motion has independent responsibilities that may bear on his or her decision on the requested dismissal. In other words, there are independent rights, interests, and duties that a court may protect, see Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941), through using Rule 48(a) as a "sunshine" provision that exposes the reasons for prosecutorial decisions.

25

As discussed above, one such right is that of the defendant to not be harassed by repeated prosecutions that are dismissed before jeopardy attaches. Another interest that could be served by a hearing is the court's inherent authority to ensure that its processes are not being abused. Cf. Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."); Eash v. Riggins Trucking, Inc., 757 F.2d 557, 567 (3d Cir. 1985) (en banc) (discussing courts' inherent power to deter abuse of the judicial process through sanctions). In holding the hearing that he so long ago scheduled, Judge Swan may therefore appropriately inquire into whether there were any improprieties attending the Government's petition to dismiss the Richards's prosecution.

Additionally, the public has a generalized interest in the processes through which prosecutors make decisions about whom to prosecute that a court can serve by inquiring into the reasons for a requested dismissal. See United States v. Cowan, 524 F.2d 504, 512–13 (5th Cir. 1975) ("We think [Rule 48(a)] should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed."). While this interest cannot rise to the substantive ability to compel a prosecution to proceed, it does argue in favor of allowing a court to force prosecutors to publicly reveal their reasons for not proceeding before granting a requested dismissal. Bringing these decisions into the open may, in turn, lead to attempts by the public to influence these decisions through democratic channels.

In sum, we are not prepared to rule that a judge who suspects wrongful behavior in the proceedings of the individuals before it has no power to inquire into what the true circumstances are. Rather, a "sunshine" rule that requires prosecutors to disclose the reasons for their actions and allows limited additional inquiry is sufficiently procedural that it does not run afoul of the dictates of the ROA. Any doubt in this regard would seem to be resolved

by the fact that, as discussed above, Judge Swan had no apparent power to force the Attorney General to proceed with a prosecution of Richards.

For all the foregoing reasons, we conclude that the District Court erred in granting the writ of mandamus. Therefore, its order granting the writ will be reversed, with instructions to remand the case to the Territorial Court for further proceedings consistent with this opinion. The parties shall bear their own costs.9

_____

9. Although we do not have before us the question whether mandamus would be appropriate if, having conducted the hearing, Judge Swan then refused to dismiss the charges against Richards, we must note that on the facts currently in the record, we strongly doubt that a refusal to dismiss would be justifiable. As the discussion of Rule 48(a) indicates, Judge Swan's ordering a hearing on the facts before him took him to the outer limits of his authority. Should he deny the motion on remand, or refuse to rule promptly one way or another, see In re Sharon Steel Corp., 918 F.2d 434, 436–37 (3d Cir. 1990), Richards or the Government may then either file an interlocutory appeal or request a writ of mandamus.

27

GARTH, Circuit Judge, dissenting:

The majority opinion in the instant matter has much to commend it, as it presents a detailed and masterful analysis of an extremely complex area of law. Indeed, I concur with the majority's conclusion (1) that the Appellate Division of the District Court of the Virgin Islands possessed the authority to issue a writ of mandamus against the Territorial Court of the Virgin Islands; and (2) that Territorial Court Rule 128(b) violates the Revised Organic Act (ROA).

I part company with the majority opinion, however, with respect to its bottom line: its overly-ingenious interpretation that Federal Rule of Criminal Procedure 48(a) is nothing more than a "Sunshine" provision -- a panacea that can provide both the courts and the general public with the reasons behind the United States Attorney's decision to dismiss pending charges against a particular defendant.1 Contrary to the majority, in my view, Rule 48(a) is a substantive rule that alters the common law in order to allow the district courts to prevent a prosecutor from dismissing criminal charges without the courts' consent.

As a result, Rule 48(a) cannot be imported into the rules of the Territorial Court through its Rule 7 because only procedural -- and not substantive -- rules may be promulgated by the Territorial Court. Accordingly, I would hold that the Attorney General of the Virgin Islands is correct in his interpretation of Rule 48(a) as a substantive rule and that accordingly, Richards's charge must be dismissed without court interference. It is for this reason that I respectfully dissent.

I

The ROA empowers "the courts established by local law" (i.e., the Territorial Court of the Virgin Islands) to prescribe their own "rules governing practice and procedure." 48
_____

1. The majority terms Rule 48(a) "a sunshine provision that exposes the reasons for prosecutorial decisions," Majority Op., at 25, presumably in line with the Government in the Sunshine Act, 5 U.S.C. S 552b, which seeks to open local government meetings for citizen observation.

28

U.S.C. S 1611(c). Purporting to use this statutory provision as authority, the Territorial Court promulgated a rule patterned after Rule 48(a) -- its Rule 128(b), which states that

> [n]o criminal case filed in the court . . . shall be dismissed upon motion by any party except upon a determination by the Court that the dismissal is in good faith, in the public interest, and in the interest of justice.

The Appellate Division of the District Court of the Virgin Islands held this rule to be void. See In re Richards, 52 F. Supp. 2d 522, 528-29 (D.V.I. 1999). That court also held that Rule 48(a), which states that

> the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate,

could not be applied in the Territorial Courts of the Virgin Islands, notwithstanding the effect of Territorial Court Rule 7.2 Id. at 529-30. The Appellate Division premised this holding on the fact that, pursuant to the ROA, any rule promulgated or adopted by the Territorial Court, including Rule 7, must be procedural, and not substantive, in nature. See id. at 528-30. The majority in the instant case, as opposed to my view, holds that Rule 48(a) is not a substantive rule, although it admits that the rule "is adorned with unmistakable substantive trappings." Majority Op., at 21. In my opinion, there is no difference between Rule 128(b), which even the majority rejects as being in violation of the ROA, and Rule 48(a). The contents of both rules are substantively identical and obviously, therefore, if one rule is ineffective to condition a prosecutor's recommendation of dismissal, then so too is the other. Hence, my position in this regard is straight-forward and rather simple: neither Rule 128(b) nor Rule 48(a) is effective

_____

2. Territorial Court Rule 7 provides that "[t]he practice and procedure in the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence." Terr. Ct. R. 7.

in the courts of the Virgin Islands because both are
substantive rules.

A

The difference between rules that are "substantive" and
cannot be promulgated or adopted in the Virgin Islands and
those that merely regulate "practice and procedure" must
initially be explored. The starting point for this inquiry
must be the Supreme Court's watershed decision in
Sibbach & Co. v. Wilson, 312 U.S. 1 (1941). 3 In Sibbach, the
Court held that "the test must be whether a rule really
regulates procedure[ ] -- the judicial process for enforcing
rights and duties recognized by substantive law and for
justly administering remedy and redress for disregard or
infraction of them." Id. at 14.

As numerous commentators have indicated, however, the
Sibbach test alone is of little help in determining whether a
given rule is procedural or substantive in nature. See
Wright, Miller & Cooper, Federal Practice & Procedure:
Jurisdiction, S 4509, at 264 (stating that the Sibbach
formula "is no test at all -- in a sense, it is little more than
the statement that a matter is procedural if, by revelation,
it is procedural"). As a result, in order to derive a proper
standard to delineate between procedure and substance,

_____

3. I acknowledge that Sibbach and its progeny concern not the ROA, but
the Rules Enabling Act (REA), presently codified at 28 U.S.C. S 2072. The
REA, quite similar to the ROA, authorizes the Supreme Court of the
United States to promulgate rules of practice and procedure for use in
the federal courts, so long as such rules do not impair the substantive
rights of any litigant. See 28 U.S.C. S 2072. Although the REA is not
directly implicated in the instant matter, resort to the jurisprudence
emanating from the REA is necessary because of the lack of interpretive
guidance concerning the virtually identical provisions of the ROA.
Indeed, the majority implicitly recognizes such. Majority Op., at 19 n.5.

Both the majority and I hold that the Supreme Court cannot
promulgate substantive rules under the REA. Even though neither party
to the present appeal has raised the specific issue of whether Rule 48(a)
violates the REA's provisions because it is substantive and not
procedural, I suggest that the propriety of Rule 48(a) with respect to all
federal courts be re-examined.

something must be added to the Sibbach Court's analysis. Hart and Wechsler, the oft-cited civil procedure scholars, have opined that substantive rules are those that "characteristically and reasonably affect people's conduct at the stage of primary private activity." Hart & Wechsler, The Federal Courts & the Federal System 678 (1953); see also Paul D. Carrington, "Substance" and "Procedure" in the Rules Enabling Act, 1989 Duke L.J. 281. With this understanding of the procedure vs. substance "dichotomy," I am satisfied that both Rule 128(b) and Rule 48(a) are substantive rules, and therefore violate the provisions of the ROA.

B

As the majority acknowledges, both Rule 128(b) and Rule 48(a) implicate decisions that the common law exclusively granted (and still grants, in many jurisdictions) to the prosecutor -- decisions regarding whether to dismiss pending criminal charges against a particular defendant. This prosecutorial right, known as nolle prosequi, was absolute at common law -- no entity, including the judiciary, could challenge the prosecutor's decision to end a criminal proceeding. See Confiscation Cases , 74 U.S. (7 Wall.) 454, 457 (1868) ("Under the rules of the common law it must be conceded that the prosecuting party may relinquish his suit at any stage of it, and withdraw from court at his option . . . ."); 3 Charles E. Torcia, Wharton's Criminal Procedure S 445, at 926 (13th ed. 1991). Notwithstanding this common law principle, both Rule 128(b) and Rule 48(a) restrict a prosecutor's right to dismiss criminal charges.

The nolle prosequi tradition goes to the very heart of the prosecutorial role and function. As such, any  restriction on the prosecutor's right of nolle prosequi would necessarily enter the substantive arena, and thus not be available for regulation by the Territorial Court. Given that such interference with a prosecutor's discretion "transfers discretion that was once wielded by the local prosecutor into judicial hands," Majority Op., at 17-18 (emphasis added), it is obvious that both rules must be deemed substantive.

31

The majority, which holds that Rule 128(b) is substantive, but that Rule 48(a), despite its "substantive trappings," Majority Op., at 21, is not, gives an unwarranted life to Rule 48(a) in the Virgin Islands. It does so by grafting onto Rule 48(a)'s substantive provisions a "Sunshine" gloss that runs counter to Rule 48(a)'s history and that nowhere appears in Rule 48(a)'s jurisprudence. It is not surprising, therefore, that I find the Appellate Division's analysis persuasive in finding that Rule 48(a) cannot be applied in the Virgin Islands.

i.

The majority first attempts to justify its inconsistency in characterizing identical rules differently by explaining that Rule 128(b), unlike Rule 48(a), contains specific standards. See Majority Op., at 23-24. Those standard s (i.e., good faith, public interest, and the interest of justice) inform a judge's decision whether to grant a prosecutor's motion to dismiss pending charges. Terming such principles "substantive standards," the majority reasons that Rule 48(a)'s lack of such standards is an indication that the courts' "role in granting leave to dismiss under 48(a) [is] a limited one," Id. at 21, and as such, does not wrongfully venture beyond the procedural domain.

Building upon this purported lack of standards, the majority then fashions its own interpretation of Rule 48(a) -- the "Sunshine" principle to which I alluded earlier. More specifically, the majority opines that Rule 48(a)"ensures that [the courts'] processes are not being abused," and allows the public to gain an insight into "the processes through which prosecutors make decisions about whom to prosecute." Id. at 26.

As an initial matter, although the majority is correct that the express terms of Rule 48(a) do not indicate that a judge's decision to grant or deny a prosecutorial motion to dismiss pending criminal charges are subject to the standards of good faith, public interest and the interest of justice, those courts that have sought to interpret Rule 48(a) have imputed those standards to the rule itself. The lone Supreme Court discussion of Rule 48(a), United States

32

v. Rinaldi, 434 U.S. 22 (1977) (per curiam), states that Rule 48(a) was primarily intended to protect against prosecutorial harassment, but that a court would likely be within its discretion in rejecting a Rule 48(a) motion where dismissal was not in the public interest. See id. at 29 n.15. Picking up on this theme, the Fourth Circuit in United States v. Smith, 55 F.3d 157 (4th Cir. 1995), held that "the disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal." Id. at 159. The Smith court cited a "prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled" as examples of prosecutorial misconduct that would warrant denial of a Rule 48(a) motion. See id.

Perhaps the most extensive treatment of Rule 48(a) can be found in the Fifth Circuit's opinion in United States v. Cowen, 524 F.2d 504 (5th Cir. 1975). In Cowen, the court held that Rule 48(a) was a "manifest" attempt on the part of the Supreme Court to vest "in the courts the power and the duty to exercise a discretion for the protection of the public interest." Id. at 511. Although the Fifth Circuit believed that such discretion was extremely limited, in that the prosecutorial decision "should not be judicially disturbed unless clearly contrary to the public interest," Rule 48(a), in its view, did provide for "a discretion broad enough to protect the public interest in the fair administration of justice." Id. at 512.

As such, each of the so-called "substantive standards" identified by the majority as contained within Rule 128(b) and ostensibly missing from the provisions of Rule 48(a) have been considered part and parcel of Rule 48(a)'s "leave of court" requirement. Rule 48(a) thus vests the district judge with decisionmaking power as to whether pending criminal charges against a defendant should be dismissed pursuant to the standards noted above -- specific standards that prior to the promulgation of Rule 48(a) were weighed solely within the province of the prosecutor himself.

ii.

The majority's self-avowed purpose that it attributes to Rule 48(a) -- to air the rationale(s) behind the sought-for dismissal of a criminal proceeding -- suffers from serious flaws. See Majority Op., at 25-27. First, such an interpretation is belied by the very history behind the Supreme Court's promulgation of the rule. According to the late Professor Lester Orfield,4 the Advisory Committee's proposed version of what now appears as Rule 48(a) did not contain the phrase "with leave of court" that presently appears in the rule. Rather, the original rule provided that in order to obtain a dismissal of pending criminal charges, a prosecutor would be required to provide the district court "with a statement of the reasons therefor." See Mark S. Rhodes, Orfield's Criminal Procedure Under the Federal Rules S 48:11, at 251 (2d ed. 1987); see also 4 Drafting History of the Federal Rules of Criminal Procedure 178 (Madeline J. Wilken & Nicholas Triffen, eds.) (1991) (reprinting the original version of Rule 48(a) that the Advisory Committee transmitted to the Supreme Court). Before the Supreme Court promulgated Rule 48(a) in its present form, however, it deleted the requirement for a "statement of the reasons therefor," and replaced that phrase with the language currently found in the rule-- "with leave of court." Id.; see also United States v. Hamm, 659 F.2d 624, 631 n.23 (5th Cir. Unit A 1981) (stating that the initial version of Rule 48(a) drew sharp criticism from prosecutors, and therefore was modified to its present form).

If Rule 48(a)'s language had remained unchanged from its original Advisory Committee format, the majority would have more license for its "Sunshine" interpretation of the rule. The fact that the Supreme Court eliminated express language that would support this "Sunshine" purpose for Rule 48(a), however, is fatal to the majority's creative attempt to distinguish or differentiate between Rule 48(a) and Rule 128(b). Indeed, as Professor Orfield wrote, "a dismissal [of prosecution] might [now] be filed without any statement of reasons." Id.

---

4. Orfield was a member of the Original Advisory Committee to the Supreme Court with respect to the Federal Rules of Criminal Procedure.

The majority therefore is plainly incorrect is its novel assertion that the Supreme Court intended Rule 48(a) as a "Sunshine" rule in order to assist the court system and the public to understand a prosecutor's reasons for seeking a dismissal of a criminal proceeding. It inexorably follows that because Rule 128(b) and Rule 48(a) are spun from an identical cloth, if Rule 128(b) is void because it is substantive, then so too is Rule 48(a).

C

Moreover, I also believe that the majority's "Sunshine" interpretation of Rule 48(a) is not as innocuous as my colleagues may in fact believe. The majority claims that "the substantive reach of the rule [48(a)] appears to be effectively curtailed" because the court cannot compel a prosecutor to proceed if the motion to dismiss were denied. Majority Op., at 21. Indeed, the majority states that interpreting Rule 48(a) as a "Sunshine" rule "is sufficiently procedural that it does not run afoul of the dictates of the ROA," and that "[a]ny doubt in this regard would seem to be resolved by the fact that . . . Judge Swan had no apparent power to force the Attorney General to proceed with a prosecution." Id. at 36. I believe that the majority's theoretical analysis misses a crucial point with respect to the procedure/substance dichotomy.

As stated above, the very essence of the common law right of nolle prosequi was that the prosecutor enjoyed absolute control over the course of a specific prosecution. Although most of the preceding discussion is framed in terms of the ultimate decision as to whether to prosecute a particular offender at all, included within this broad power are a multitude of prosecutorial decisions bearing on the institution and maintenance of criminal proceedings. As an example, once a prosecutor is confronted with alleged wrongdoing on the part of a purported defendant, the prosecutor must determine under which statute(s) to seek criminal sanctions, and the proper evidence to introduce in order to obtain a conviction. Because the majority's "Sunshine" interpretation severely impacts on such decisions -- those that go to the very core of the

35

prosecutorial function -- Rule 48(a) has a much more significant reach than the majority envisages.

The facts of the instant matter demonstrate this problem. The Government of the Virgin Islands initially filed -- via an information -- a felony rape charge against Richards in the Territorial Court, and then amended that information to include a misdemeanor charge. The Government thereafter agreed to allow Richards to plead guilty to the misdemeanor charge in return for dismissal of the felony charge. Judge Swan refused to allow the Government to dismiss the felony charge. After this initial refusal, however, Judge Swan scheduled a hearing to determine whether such a dismissal was consistent with the "public interest."

This "public interest" hearing would have been no different from the novel "Sunshine" hearing now advocated by the majority. Indeed, because of the prospect of such a hearing, the Government disclosed that it sought a dismissal of the felony charges because the evidence did not support a felony conviction. The government also claimed that the primary witnesses against Richards (the alleged victim and her mother) would not testify. With this information revealed, it would surprise me if Richards were to continue to plead guilty to the misdemeanor charge, particularly because he now has been informed that the two main witnesses who could implicate him will not provide any assistance to the Government in its prosecution.

As a result, Judge Swan's "public interest" hearing, much like the "Sunshine" hearing the majority now urges upon us, essentially forced the Government to play out its hand and disclose information that it normally would seek to keep confidential.5 Indeed, the simple knowledge on the part of the prosecutor that such a hearing would be held if he were to seek dismissal of a defendant's charges could not help but impact the manner by which the prosecutor would conduct the course of the criminal litigation. In other

_____

5. I, of course, am not suggesting that a prosecutor would be entitled to keep exculpatory evidence from disclosure. See, e.g., Brady v. Maryland, 373 U.S. 83 (1963).

36

words, the allegedly innocuous "Sunshine" hearing could irreparably impair day-to-day prosecutorial decisionmaking.

The ability to hold such a hearing under the auspices of Rule 48(a) therefore provides a district court judge with the opportunity to commandeer the entire prosecutorial process -- a process that the common law provided to the prosecutor exclusively through the nolle prosequi doctrine. Given that such consequences reach far beyond the courtroom and intrusively into each and every prosecutorial decision, I do not understand how the majority's "Sunshine" interpretation of Rule 48(a) can be deemed either harmless or procedural.

II

I have gone to great lengths to point out that in an effort to save Rule 48(a) from a substantive characterization, the majority not only errs, but is inconsistent in its analysis of two identical rules -- Rule 128(b) of the Territorial Court of the Virgin Islands and Rule 48(a) of the Federal Rules of Criminal Procedure. The majority cannot hold one rule void and still uphold the other. I can understand the majority's desire to have Rule 48(a) provide for a district court's oversight of a prosecutor's decision to dismiss pending criminal charges. When the adoption of this rule goes beyond the authority that Congress has given to the Territorial Court of the Virgin Islands, however, it is neither appropriate nor wise to finesse its adoption by a subterfuge such as the seemingly benign "Sunshine" gloss that the majority has imparted to Rule 48(a).

The Appellate Division of the District Court of the Virgin Islands was quite correct in its analysis and in its issuance of a writ of mandamus. Because logic, precedent, history, and reason compel such a result, I would affirm that decision. In doing so, I must respectfully dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

37